KILGORE and others *against* BULKLEY and others.

Where a writing, purporting to be a certificate that *B* had deposited a sum of money in the *Chelsea Bank* of the city of *New-York,* dated *Chelsea Bank, July* 6, 1839, and payable on the 1st of *December* then next, to the order of *B,* and the return of the certificate, and signed " *W.* president," was assigned to *C,* for value received, by an indorsement thereon, subscribed by *B;* it was

held, that such indorsement was a bill of exchange, imposing on the parties the ordinary liabilities attached to that kind of paper.

*It seems*, that the 21st sect. of the statute of *New-York*, known as the general banking law, providing that " contracts made by any such association, and all notes and bills by them issued and put in circulation as money, shall be signed by the president or vice-president, and cashier thereof," applies, by the true construction thereof, only to such contracts, notes and bills, as are made for, and intended to be used as, a *currency*.

In an action against the indorser of a certificate of deposit issued by an association in fact organized under the general banking law of *New-York*, which certificate was signed by the president, but not by the cashier: it was held, that the want of the cashier's signature was unavailing as a defence, because the association might, by a course of practice, render itself liable on such instrument, though not executed in the mode prescribed; because it did not appear on the face of the instrument, that it was executed by an association organized under such banking law; and because it was not competent to the indorser to set up the invalidity of the instrument on account of the incapacity of the association to make the contract embraced in it; the indorser always warranting the existence and legality of the contract which he undertakes to assign.

Where a certificate of deposit, by its terms, fell due on the 1st of *December*, which was *Sunday ;* and one of the questions between the parties, was, whether by the general law of the state of *New-York,* (the *locus contractus*,) it was payable on the preceding *Saturday* or the subsequent *Monday ;* and to prove such general law, two conflicting decisions in that state were introduced, by the parties respectively, one of the superior court of the city of *New-York,* and the other by the supreme court of that state , it was held, that these decisions were admissible on such question; *that the decisions of the latter court were higher evidence* and entitled to greater weight, than those of the former; but that the decisions of neither court were to be deemed conclusive evidence of such law.

Where the plaintiff in an action against the indorser of a certificate of deposit, offered evidence to shew, that although the general law of the state of *New-York* as to negotiable paper is otherwise, yet by the usage and custom prevailing in the city of *New-York,* this particular species of *negotiable paper* is not entitled to grace, and that when, by its terms, it falls due on *Sunday,* it becomes payable on the preceding *Saturday ;* it was held, that such evidence was admissible, the law on this subject being explicitly and decisively settled.

Such evidence is admissible on the principle of ascertaining and carrying into effect the intention of the parties, and thus doing justice between them.

Nor is such evidence obnoxious to the objection, that its effect is to vary, by parol evidence, the written contract of the parties.

Any form of notice to an indorser is sufficient to fix his liability, if the instrument in question was intended to be described in such notice, and the party was not misled or deceived thereby as to the instrument intended.

*Middlesex*,
July, 1841.

Kilgore
*v.*
Bulkley.

THIS was an action of *assumpsit* against the defendants as indorsers of a promissory note, draft or order. The declaration contained several special counts, to which the common money counts were added.

*Middlesex,*
*July, 1841.*

*Kilgore*
*v.*
*Bulkley.*

The cause was tried, on the general issue, at *Middletown,* *February* term, 1841, before *Storrs,* J.

On the trial, the plaintiffs read in evidence a writing of which the following is a copy:

"$10,608 75.          *Chelsea Bank, July* 6, 1839.

I do hereby certify, that *David E. Wheeler, Robert S. Taylor* and *Noah Bulkley,* have deposited in this bank, the sum of ten thousand, six hundred and eight 75-100 dollars, payable on the first day of *December* next, to their order, and the return of this certificate.

                 D. E. WHEELER, *President."*

On this writing was an indorsement, which the plaintiffs also read in evidence, as follows:

"For value received, we do hereby assign to *S. F. Maccrakan, Joseph S. Lake,* and *Daniel Kilgore,* Commissioners of the *Ohio Canal Fund,* or their successors, the amount of the within certificate.        D. E. WHEELER,

                        R. S. TAYLOR,

                        NOAH BULKLEY."

Both the writing and the indorsement were respectively made and delivered in the city and state of *New-York.* *D. E. Wheeler* was then president of the *Chelsea Bank,* and his signature, and that of *Taylor* and *Bulkley,* to the indorsement, were genuine. The *Chelsea Bank* is, and always has been, located in the city of *New-York.* On *Saturday,* the 30th of *November,* 1836, the writing in question, with the indorsement thereon, was presented at the banking house of the *Chelsea Bank,* in the city of *New-York,* for payment; and payment thereof was then and there demanded, by *John D. Campbell,* a notary public, residing in the city of *New-York*; but it was not then, or at any other time, paid; and it was thereupon, by such notary public, protested for non-payment, by whom a notice was addressed to *Noah Bulkley,* one of the defendants, who was then living at *East-Haddam* in this state, in these words :—" *New-York, November* 3rd, 1839. Please to take notice, that *D. E. Wheeler's* note for 10,608 75-100 dollars, indorsed by you, is protested for non-payment, and that the holders look to you for the payment thereof. *J. D. Campbell,* notary public," &c. Superscribed, " Mr. *Noah Bulkley, East-Haddam, Ct."* The letter containing this notice, was put into the mail at the city of *New-*

*York*, on *Monday*, the 2nd day of *December*, 1839. The 1st day of *December*, 1839, was *Sunday*. The defendants offered evidence to prove, and claimed that they had proved, that said banking company were formed and organized, in the month of *November*, 1838, under and in pursuance of a statute law of the state of *New-York*, entitled "An Act to authorize the business of banking," passed on the 18th of *April*, 1838; which law was read in evidence, and is a part of the case. This evidence was received, subject to any exception which the plaintiffs should make thereto.

The plaintiffs had been duly appointed commissioners, by and in behalf of the state of *Ohio*, of a certain fund of that state, called "the canal fund;" and as such commissioners, they took said writing so indorsed by the defendants, which belonged beneficially to the state of *Ohio*.

By the laws of the state of *New-York*, promissory notes, payable to any person or persons, or order, or to the bearer thereof, are negotiable ; and upon such notes, as well as upon bills of exchange, when payable on time, three days' grace are allowed.

The plaintiffs read in evidence, subject to objection on the part of the defendants, the depositions of sundry individuals, to prove, that by a local usage, which was general in the city of *New-York*, and well known, post-notes, and certificates of deposit on time, issued by the banks in that city, and drafts and checks on time, upon such banks, were not entitled to, and did not have grace allowed upon them, although negotiable, but were paid, when, upon their face, they purported to fall due, without any grace ; and that, if the day on which they purported to fall due, without grace, happened to be *Sunday*, they, according to such usage, actually became due and payable on the *Saturday* next preceding such *Sunday*, when they were, by such usage, presented for payment ; and if not paid, were protested for non-payment ; and notice of such non-payment was in due time given ; and that they were not afterwards presented for payment, or protested for non-payment.

The plaintiffs, also, for the purpose of proving the law of the state of *New-York*, produced and read in evidence, the report of a decision of the superior court of the city of *New-*

*Middlesex,*
*July, 1841.*

Kilgore
*v.*
Bulkley.

*Middlesex,*
*July, 1841.*

Kilgore
*v.*
Bulkley.

*York,* made in *December,* 1836, in the case of *Orlando C. Os-borne* & al. v. *George R. Smith.* (*a*)    This closed the evidence on the part of the plaintiffs.

(*a*)    *Orlando C. Osborne* and *George K. Sistare* v. *George R. Smith.*

THIS was an action against the endorser of a check upon the *Tradesmans Bank.* The check was in these words and figures:—" Cashier of *Tradesmans Bank,* Pay *G .R. Smith* ,or order, on the 16th *October,* one hundred fifty dollars 34-100. *New- York 6th October,* 1836.        [Signed]        W. C. HOLLEY."
    [Endorsed.]        GEORGE R. SMITH.

The 16th *October* being *Sunday,* the check was presented for payment on *Saturday,* the 15th *October ;* and payment being refused, notice, was, on the following *Monday,* the 17th of *October,* given to the defendant, the endorser, of its dishonour.    The defence was, that this presentment was premature; that the check was an inland bill of exchange, and being payable on a day certain subsequent to its date, was entitled to the usual days of grace allowed on such bills ; and consequently, it could not be presented for payment until the 19th of *October ;* and not having been presented, and payment of it demanded, on that day, the endorser was discharged.

And it was further objected, that if the check was entitled to grace, then as it was made payable on the 16th *October,* which was *Sunday,* the party on whom it was drawn, had all of the following *Monday* to pay it in, and it was irregularly protested on *Saturday.*

The plaintiffs insisted, that the rule or usage for the allowance of grace on bills and notes, did not extend to checks on incorporated banking institutions, either when payable presently, or at a future day ; and they moreover offered to show, that such checks requiring the sum drawn for, to be paid on a day subsequent to the date of them, were, by the general usage and custom of merchants and others, demandable on the day specified therein for the payment thereof, and if presented for payment, and if not paid, on that day, were treated as dishonoured, and protested for non-payment ; and notice given to the endorsers, if endorsed, of such dishonour, to charge them with the payment of the same.

To this evidence the defendant's counsel objected, as inadmissible ; but the objection was overruled, and the testimony was received.    Four witnesses concurred in stating, that checks on banks, like the check in evidence, payable on a day subsequent to their date, were invariably presented for payment on the day mentioned in them, and on which they were, by the terms of them, made payble, and protested, if not paid on that day ; that this was the general usage and custom of merchants, brokers, and others; that it was a common practice to draw checks payable at a day subsequent to the date of them, or to post-date them, that is to say, to date them on some day subsequently to the day of the issuing and delivery of them; and that, in both cases, they were always presented for payment on the day specified in them ; and no days of grace were ever allowed on them.    One of the witnesses was a broker, who testified, that he frequently, and almost daily, saw checks like this payable on a day subsequent to their date, and that they were always presented for payment on the day specified in them.    Another of the witnesses had been four years notary public for a bank, and had frequently seen such checks ; and his practice invariably was, to demand payment of them, on the day specified in them, and to protest them, if not paid on that day ; that it was the general usage to do so : the days of grace were not allowed on such paper.    Another of these witnesses, who had dealt largely in exchange, testified, that in the course of his business, he had received, he presumed, one or two millions of checks on banks made payable at a day subsequent to their date, and also checks dated ahead ; and that it was the general usage to present them for payment on the day specified in them, and not to allow the days of grace upon them usual on bills of exchange.

The question of usage was submitted to the jury, who, on this evidence, found the fact of usage in favour of the plaintiffs ; and under the charge of the judge, on the question of law involved in the cause, gave a verdict for them.

The defendant's counsel then applied to set this verdict aside, on the grounds taken by them, at the trial, for their defence ; and insisting that the evidence of usage offered by the plaintiffs was improperly admitted, and that the usage, as proved, was in conflict with the rules of law, and of no avail as against their defence.

The defendants thereupon introduced and read in evidence, for the purpose of proving the law of the state of *New-York,* a report of a decision of the supreme court of that state, in the case of *Salter* v. *Burt,* reported in the 20th volume of *Wendell's* reports, page 205 ; which is also a part of the pres-

*Middlesex,*
*July,* 1841.

Kilgore
*v.*
Bulkley.

The opinion of the court was delivered by Jones, Ch. J. The two questions in this cause were, first, whether a check on a bank payable at a day subsequent to the date of it, is to be paid, if presented for that purpose, on the day mentioned in it for the payment of it, or whether the holder must wait until the third day after the day on which it purports to be payable, before he can present it to the bank for payment, and demand payment of it, and on refusal, protest it for non-payment. And secondly, if to be paid on the day it is by the terms of it made payable, then whether if that day happens to be *Sunday,* it is to be paid on the *Saturday* before, or on the *Monday* after 'the day appointed by it for the payment of it. On the first of these questions a usage or custom was relied on, and was proved to the satisfaction of the jury to exist; that such checks are to be paid on the day named in them, and appointed by them for the payment of them, and are not entitled to grace ; and if the custom thus proved is a good custom, and the testimony warrants the finding of the jury, that question is at rest. We think the jury were fully warranted in their finding, by the evidence before them ; and we see no sufficient ground for impeaching the custom. The objection to it, drawn from its supposed collision with the rules of the common law, cannot, in our views of it, be sustained, without impugning some of the best settled principles applicable to mercantile law. Usages constitute a large portion of commercial rules ; and to that source solely the allowance of days of grace on mercantile paper is to be traced. No rule of the common law or statutory provision impressed that feature upon the character of commercial paper. It had its origin in usage, and to usage it owes its existence. It has now become, it is true, (where it is applicable,) parcel of the contract ; and is no longer an indulgence of grace, but is, and long has been, a matter of right. A bill or a note payable at 60 days, is, in its legal effect, payable at 63 days ; but this custom does not apply to every species of commercial paper. In its application to bills, it does not exist at all places ; and it varies moreover at different places, in the time or grace it allows ; and this case shows, we think, that with us it does not embrace checks on banks, though made payable at a day certain, subsequent to their date, and notwithstanding their resemblance to inland bills of exchange.

But it is insisted, that a check is an inland bill of exchange, and when payable on a day subsequent to its date, it is entitled, by the general commercial law, to grace ; and we are referred to the decision of the superior court of a sister state as supporting the proposition. In that case, no evidence was offered of usage. And in our own courts, we apprehend the principle supposed to be thus settled in that case, has received no sanction ; and independently of usage, its solidity may well be questioned. A check is an order or draft upon the deposits of the dealer of the bank. It has a distinct and appropriate name and character of its own ; and though, in its form and many of its properties, it closely resembles an inland bill of exchange, it is not strictly, and in all respects, the same species of paper with the inland bill. In the case of *Conroy* v. *Warren,* 3 *Johns. Ca.* 259. a check was held, by our supreme court, not to come within the act of congress then in force laying a duty on stamped paper, although that act enumerated foreign and inland bills of exchange amongst the instruments required by its provisions to be stamped. The holder of a check payable on a day subsequent to the date of it, cannot, it is believed, present the same for acceptance previously to the day of payment, and on the refusal of the bank to accept it, treat it as dishonoured, and resort to the drawer or indorser for immediate payment. And we are not prepared to say, that we should be compelled, by authority, or upon principle, (were the question now before us,) to extend to checks upon banking institutions, whose vital principle is certainty and promptness in payment, and which profess to have at all times, upon their counters, or in their vaults, funds in money to meet the calls upon them, and to be ready to pay upon demand, the allowance of the days of grace which are accorded to individuals, and which has its foundation in an indulgence, by common consent, to

*Middlesex,*
July, 1841.

Kilgore
*v.*
Bulkley.

ent case.   No question was made as to the accuracy of these reports, either as to the facts or the decisions.   The defendants also read in evidence, the decision of the supreme court of this state, in the case of *Avery & al. v. Stewart & al.* 2 *Conn. Rep.* 69 ; to which reference is made, by the supreme court of *New-York*, in deciding the case of *Salter v. Burt.*

merchants and others, upon whom bills may be drawn, and who, though abundantly able, may not be prepared to pay them, at the precise time they fall due. But without dwelling upon these distinctions, we are satisfied, that if inland bills and checks are to be regarded as substantially alike, yet a usage or custom may well exist, by which grace would be denied to the one, though allowed to the other.   The allowance of grace is wholly the child of usage; and a custom or usage that a particular species of paper or inland bills shall be payable without grace, is just as admissible and equally valid as a custom or usage that another species of paper or inland bills shall be entitled to grace.   The usage or custom which excludes grace, certainly does not more impugn or qualify the general rules of the law merchant, or of the common law, than the custom which allows it; and yet the custom which allows it, is acknowledged to be valid.

But it is said, in the second place, that if grace is not allowable, then the check was payable on the day appointed by it, for the payment of it; and that, as that day was a *Sunday,* the common law rule applied, and the check could not be demanded until *Monday.*   To this it is answered, that a check is a species of commercial paper, and is governed by the law merchant; and that, by that law, negotiable paper falling due on a *Sunday,* is to be paid on the day previous; and to this opinion we incline.   We understand the general usage and custom to be, that negotiable paper, whether to order or bearer, when payable at a future day, if the day on which by its tenor and legal effect it becomes due and payable, falls due on a *Sunday,* is to be paid on the preceding day. This is the uniform language of all the elementary writers, and of all the judicial decisions on the point.   It is, in our views of it, a mistake to suppose, that this anticipation, in such cases, of the day of payment, is confined to negotiable paper entitled to grace, and makes part of the custom which allows grace, simply reducing the time from three to two days, when the last of the three days usually allowed, happens to fall on a *Sunday ;* as the defendant's counsel contend.   There is no such distinction to be found in the books; and we see no just ground on which it can rest.   The same reason and the same necessity exists for making the paper not entitled to grace which falls due on *Sunday,* payable on *Saturday,* as exists for requiring paper entitled to grace falling due on *Sunday,* to be paid on *Saturday,* if both species of paper are negotiable mercantile paper; and there would be a manifest inconvenience in any distinction in this respect between them.   The cases cited by the defendant's counsel do not, in our view of them, give any countenance to such a distinction.   They were, it is true, cases of notes entitled to grace, and the *Sunday* was the last day of grace; and in one of them, the judges do advert to the circumstance that the acceleration of the day of payment had the effect of shortening the term of grace; but that was not the point on which the decision turned.   The question was, whether the common law rule securing to the obligor the entire term of credit or time for payment, in fulfilment of his obligation, or the commercial usage in favour of promptness of payment, should prevail and govern the case; and the court decided in favour of the mercantile usage, on the ground of its being a case of negotiable commercial paper, and on the principle of the law merchant, which gives to usages of long standing and general notoriety the force of laws.   The rule is general and uniform, that whenever such paper, by the tenor of it, or by its legal operation and effect, falls due and becomes payable on *Sunday,* it is to be paid on the preceding day.   This check, by the tenor of it, fell due and became payable on *Sunday,* the 16th day of *October,* and was, of course, to be paid on *Saturday,* the 15th, and being demanded on that day, and payment refused, the endorser to whom due notice of such demand and refusal was given, became charged therewith and is liable for the same.

Judgment for the plaintiffs.

*Middlesex,*
July, 1841.

Kilgore
*v.*
Bulkley.

It was conceded by the parties, that the superior court of the city of *New-York*, was a court having a local jurisdiction only in that city; and that the supreme court, although not the court of last resort in that state, was a court of general jurisdiction throughout the state, and the highest court but one therein, and had jurisdiction to revise, correct and overrule the decisions of the superior court, upon writs of error, or upon appeal from the superior court. And the defendants, continuing their objection to the depositions read by the plaintiffs, in respect to said usage in the city of *New-York*, as to the time when by such usage post-notes and certificates of deposit on time, issued by banks in said city, and drafts and checks upon said banks, purporting on their face to fall due on *Sunday*, actually became due and payable, so attempted to be proved by the plaintiffs, as it was opposed to the general law of said state of *New-York*, and went, and was intended, to vary, controul and contradict the writing so indorsed by the defendants, and the construction thereof, according to the general law of said state, requested the court to rule out and reject such depositions, so far as they related to such usage in said city of *New-York*, and not permit the evidence as to such local usage to go to the jury.

The court, however, over-ruled the objection, and admitted the evidence; and it went to the jury.

The defendants then introduced evidence, tending to prove, and claimed that they thereby had proved, that there was no such local usage in the city of *New-York*, in respect to post-notes and certificates of deposit on time, issued by the banks in that city, or drafts or checks on time on such banks, and negotiable, as that grace was not to be allowed upon them; or if, purporting upon their face, without grace, to fall due on a day which happened to be *Sunday*, they actually became, according to such usage, due on the day preceding, and were then presented for payment, and if not paid, protested for non-payment, and were not presented for payment or protested for non-payment afterwards. And it was also by the defendants, on the trial, proved, (subject to any exception to such proof on the part of the plaintiffs,) that said writing so indorsed by the defendants, was issued and given for and on account of certain canal stock of the state of *Ohio*, and

by said state, through the agency of the plaintiffs, as commissioners, sold to said bank ; and that, at the time said writing was so issued and indorsed by the defendants, they had not, and never had, money deposited in said bank ; and that the indorsement was made by them for the accommodation of said bank, and that they received no consideration for their indorsement of said writing, or the assignment thereof to the plaintiffs ; and that they were in no wise interested in the consideration for which said writing was issued, excepting as stockholders in said bank, which they then were ; and that said certificate was so issued and indorsed, and received by the plaintiffs, with full knowledge of all said facts, and in pursuance of an arrangement to that effect between the plaintiffs and said banking company and the defendants. No claim on the part of the plaintiffs was made to recover in this action, excepting under and by virtue of said writing, and the indorsement thereof, by the defendants, and the facts before stated.

The plaintiffs claimed to the jury, that they had proved the usage, claimed by them, in respect to the non-allowance of grace on post-notes and certificates of deposit on time, issued by, and drafts and checks on time, made and drawn upon, banks in said city ; and also as to the time of their becoming due and being presented for payment, and protested for non-payment, when purporting upon their face to fall due upon a day which happens to be *Sunday,* where no grace is allowable upon them ; all of which was denied by the defendants, who claimed, that such usage was not proved.

The plaintiffs further claimed to the jury, that they had, by the evidence introduced by them, proved, that by the general law of the state of *New-York,* all negotiable paper on time, purporting upon its face to fall due on *Sunday,* and not entitled to grace, actually became due on the day next preceding ; and that to fix the liability of the drawers or indorsers thereof, it was necessary that it should be, on such preceding day, presented for payment ; and if not then paid, protested for non-payment ; and that to fix such liability, no further presentment or protest was requisite ; and that by the general law of the state of *New-York,* no other presentment or protest of the writing indorsed by the defendants, was necessary to fix their liability as indorsers thereof, than that

which was made. This claim was resisted and denied, by the defendants, who claimed to the jury, that they had proved that such negotiable paper on time, not entitled to grace, and purporting to fall due on *Sunday*, did not, by the general law of the state of *New-York*, actually become due until the next following *Monday* ; and that to fix the liability of the defendants as indorsers of said writing, it should have been presented for payment on *Monday*, the 2nd day of *December*, 1838, when, and not before, it became actually due and payable ; and that the jury ought to deem the decision of the supreme court conclusive evidence of the law in this case, notwithstanding the decision of the superior court.

*Middlesex,*
*July, 1841.*
Kilgore
*v.*
Bulkley.

The plaintiffs claimed to the court, that if, by the general law of the state of *New-York*, the paper so indorsed by the defendants would not have become due or payable until the 2nd day of *December*, 1839 ; and to fix the liability of the defendants as indorsers thereof, should have been then presented for payment ; yet if the jury should find such usage to exist in the city of *New-York*, as claimed by them, in respect to such paper, it ought to and would in said city controul the general law of said state, and such paper indorsed by the defendants, by virtue of such usage in said city, would have become due and payable on the 30th day of *November*, 1839 ; and that no presentment for payment, excepting on that day, was requisite to fix the liability of the defendants as indorsers thereof.

And the plaintiffs also claimed, and requested the court to instruct the jury, that the writing so indorsed by the defendants, was a promissory note of the *Chelsea Bank* ; and that the defendants, by reason of their indorsement, had subjected themselves to the same liabilities, as they would have been subjected to, if said note had been made by said bank and indorsed by the defendants, in the usual form in which negotiable promissory notes are made and indorsed, without excluding recourse to the indorsers.

The plaintiffs also claimed, that if the writing so indorsed by the defendants, was not a promissory note of said bank, the indorsement, in connexion with said writing, constituted a check or bill of exchange, made or drawn by the defendants, on said bank ; and that the defendants had, by their indorse-

ment, subjected themselves to the same liabilities, as if the indorsement, in connexion with said writing, had been a check or bill of exchange, drawn by the defendants, in the usual form.

The plaintiffs further claimed, that notwithstanding said writing was given for said stock purchased by said bank, and the defendants indorsed it for the accommodation of said banking company merely, the plaintiffs were, nevertheless, entitled to recover under some one or more of the common counts in the plaintiffs' declaration, unless the plaintiffs had been guilty of laches in respect to the presentment of said writing for payment, or in giving notice to *Bulkley* of the non-payment thereof.

The plaintiffs further claimed, that the notice of the non-payment and protest of said writing to *Bulkley,* was sufficient to put him on inquiry, and therefore legal notice to him of the presentment and non-payment of said writing, and was all the notice requisite to charge him as indorser of said writing, in case it were a promissory note of said bank, or as maker or drawer, in case said indorsement, in connexion with said writing, amounted to a check or bill of exchange upon said bank.

The defendants claimed to the court, that if, by the general law of the state of *New-York,* said writing would not have become due or payable until the 2nd day of *December,* 1839 ; and that to fix the liability of the defendants as indorsers thereof, it was necessary, by such general law, that said writing should have been presented on that day for payment, although by said usage, as claimed by the plaintiffs, in the city of *New-York,* if such usage should be found by the jury to exist, said writing would be deemed to have become due and payable on the 30th of *November,* 1839, and would have been then presented for payment, and if not paid, protested for non-payment, and not presented for payment or protested afterwards ; yet that such usage could not controul the general law of the state of *New-York,* or supersede the necessity of presenting said writing for payment on the 2nd day of *December,* 1839, in order to fix and establish the liability of the defendants as indorsers thereof.

And the defendants further claimed to the court, that said writing was not a promissory note of said bank, inasmuch as

it was not signed, by any cashier of said bank, or in any such manner as required by the law of the state of *New-York,* under which said banking company was formed and organized, and authorized to act, so as to be valid or obligatory upon said banking company; and that the defendants had not, by their said indorsement, warranted said writing to be a good and valid note of said bank, nor any note of said bank, nor precluded themselves from claiming that the same was the note of said *Wheeler*; and requested the court so to charge the jury.

The defendants further claimed, that said indorsement, in connexion with said writing upon which it was made, did not amount to, or constitute, a check or bill of exchange, made or drawn by the defendants upon said bank; and that the defendants had not, by said indorsement, subjected themselves to the same liabilities, as if said indorsement, in connexion with said writing, had been a check or bill of exchange, made or drawn by the defendants in the usual form upon said bank; and also, that the defendants had not, by their indorsement, subjected themselves to any liability whatever.

And the defendants further claimed, that said writing, if a promissory note, was the promissory note of said *Wheeler,* and not of said bank; or if a check or bill of exchange, in connexion with said indorsement, was a bill of exchange drawn upon said *Wheeler,* and not upon said bank; and whether a note of said *Wheeler,* or a check or bill of exchange drawn on said *Wheeler,* it was entitled to three days' grace, and should have been presented for payment upon the last of said days of grace, and notice of non-payment given; and inasmuch as this was not done, the defendants were not liable, either as indorsers or drawers.

The defendants further claimed, that if there had been any laches on the part of the plaintiffs, in respect to the presentment of said writing for payment, or said indorsement in connexion with said writing, or in giving notice of the non-payment thereof to said *Bulkley,* the plaintiffs could not recover under the common counts, or any of them; and also, that if there was no such laches on the part of the plaintiffs, inasmuch as said writing was given for said stock, so sold to the said banking company, and was indorsed by the defendants for the accommodation merely of said bank, and nothing

was received by them, or either of them therefor, and they were in no wise benefited by reason thereof, unless as such stockholders in said bank, the plaintiffs could not recover against them, upon the common counts, or any of them.

The defendants further claimed, that inasmuch as it appeared on the face of the declaration, that the plaintiffs were mere agents of the state of *Ohio,* this action could not be maintained by them, but if any action could be maintained at all, it should be in the name of the state of *Ohio.*

The defendants also claimed, that the notice of the non-payment of said writing, given to said *Bulkley,* was not sufficient to fix his liability, either as the indorsor of said writing, allowing it to be a promissory note, or as maker or drawer, allowing the indorsement, in connexion with said writing, to be a check or bill of exchange.

The defendants further claimed, that if, by the general law of the state of *New-York,* said writing would not be actually due or payable, until the 2nd day of *December,* 1839, no such local usage as claimed by the plaintiffs in the city of *New-York,* could change or alter, or be admitted or received to change or alter, the construction given to it by such general law, or make it due or payable on the 30th of *November,* 1839 ; and the parties respectively requested the court to charge the jury in conformity with their respective claims.

The court charged the jury, that said instrument or writing, so offered and read in evidence, by the plaintiffs, was a negotiable promissory note, and that it imported to be a note of the said *Chelsea Bank,* and that, if said bank had authorized its president to execute and deliver it on its behalf, it was obligatory on said bank as a promissory note, although it was not countersigned by the cashier of said bank ; and that in such case, it would not be competent for said bank to defend itself against said instrument, on the ground that it was not so countersigned.

That the said indorsement of said instrument to the plaintiffs was a negotiation thereof, notwithstanding the peculiar form of the indorsement, and transferred to, and vested in, the plaintiffs a legal title thereto, by virtue whereof they could maintain an action thereon against said bank, or the defendants ; and that, by reason of said indorsement, the defendants were subjected to all the liabilities to which they

would have been legally subject, if said note had been made by said bank, and indorsed by the defendants, in the usual and customary form of making and indorsing negotiable promissory notes, without excluding recourse to the indorser.

That by such indorsement and transfer, the defendants were precluded, in this suit, from denying that said instrument was a good and valid note of said bank.

That said indorsement, in connexion with said instrument, constituted and was equivalent to a bill of exchange, drawn by the defendants, on said bank, in favour of the plaintiffs, and imposed on the defendants the same liability as a bill of exchange drawn by the defendants on said bank, in favour of the plaintiffs, in the usual and customary form of drawing bills of exchange.

That the contract evidenced by said instrument and indorsement, was to be governed by the laws of the state of *New-York,* where said instrument was drawn, negotiated, and payable.

That the court could not judicially take notice of the laws of said state ; but that it was a question of fact for the jury to find from the evidence, what such laws were.

That if by the general law of the state of *New-York,* said instrument was entitled to days of grace, but there was a general and publicly known usage prevailing in the city of *New-York,* according to which such instruments were not entitled to days of grace, such usage would govern, and would controul such general law, and give a construction to said contract ; and that it would be deemed to have been made with reference to such usage ; and that if such was the general law of that state, and such a usage was proved, then, if by the general law of that state, such instrument would be due and payable on the *Monday* after the *Sunday,* when, by the terms thereof, it fell due ; but there was a general and publicly known usage prevailing in the city of *New-York,* according to which said instrument would become due on the *Saturday* next preceding such *Sunday,* the usage last-mentioned would govern, and would controul said general law last-mentioned, and give a construction to the contract ; and that it would be deemed to have been made with reference to such usage ; and that, in that case, a presentment of said instrument for payment on said *Saturday,* according to

*Middlesex,*
*July, 1841.*

Kilgore
*v.*
Bulkley.

said usage, would be a sufficient presentment to fix the liability of the defendants, as indorsers thereof.   That such usage, in order to have such effect, must have existed so long, and have been so public, as to become generally known.   That it was for the jury to find what was such general law and usage ; and that their inquiry must be confined to such general law and usage as was applicable to the paper in question in this suit.

That with regard to what was the general law of the state of *New-York,* the decisions, which had been read, of the supreme court of that state, and the superior court of the city of *New-York,* and the supreme court of the state of *Connecticut,* were competent and admissible evidence for the purposes for which they were introduced ; that said decisions of the supreme court of the state of *New-York* were higher evidence of what the law was in that state, and entitled to greater weight, than those of the said superior court ; but that the decisions of said supreme court were not to be deemed conclusive evidence of such law.

That the said notice addressed to the defendant *Bulkley,* was sufficient to fix his liability as an indorser of said instrument, notwithstanding the variances between said instrument, and the description thereof in said notice, if said instrument was intended to be described in, and he was not misled or deceived by, said notice, as to the instrument intended by it.

That this suit might be maintained by the plaintiffs in their own names, notwithstanding the objection of the defendants as to their being commissioners of the canal fund of *Ohio.*

That as the consideration for said writing consisted of a sale of said canal stock to said banking company, and the defendants did not receive any part of said consideration, otherwise than as stockholders in said bank, and indorsed it for the accommodation of said banking company merely, and received nothing for their indorsement, the plaintiffs could not recover upon any or either of the common counts in the declaration, whether the plaintiffs had, or had not, been guilty of laches in respect to the presentment of said writing, or in giving notice to said *Bulkley* of the non-payment thereof.

That therefore, if the jury should find, that, either by the general law of the state of *New-York,* or by the usage in the

city of *New-York*, days of grace were not allowed on post-notes of banks, or drafts on banks in said city, and payable at such banks; and that either by the general law of said state, or the usage in said city, such post-notes or drafts, when, by their terms, they are payable on a day which is *Sunday*, are due on the *Saturday* preceding; and that the notice sent to said *Bulkley* was intended to refer to the instrument in suit, and that he was not misled or deceived, by such notice, as to the instrument intended; then their verdict should be for the plaintiffs, for the amount mentioned in said instrument, with interest, at the rate of seven *per cent.* (which was agreed by the parties to be the legal rate of interest in the state of *New-York*,) since it was due; otherwise for the defendants.

*Middlesex,*
*July, 1841.*

Kilgore
*v.*
Bulkley.

The plaintiffs obtained a verdict; and the defendants moved for a new trial, for the admission of the evidence objected to, by the defendants, and for a mis-direction.

*Hungerford* and *Bulkley*, in support of the motion, contended, 1. That associations under the general banking law of the state of *New-York*, must stand upon the same footing as corporations. Individuals are, in like manner, exempted from liability, and are to be bound only in the manner specified in the statute. The statute is merely an enabling act. *The People* v. *The Utica Insurance Company*, 15 *Johns. Rep.* 383. *The New-York Firemen Insurance Company* v. *Ely & Parsons*, 5 *Conn. Rep.* 560. 568. Same parties, 2 *Cowen*, 678. *Head* v. *Providence Insurance Company*, 2 *Cranch*, 127. *Beatty* v. Lessee of *Knowles*, 4 *Peters* 168. *Brougton* v. *Manchester and Salford Water Works*, 3 *Barn. & Ald.* 1. By the 21st section of the act referred to, it is enacted, " That contracts made by any such association, and all notes and bills by them issued and put in circulation as money, shall be signed by the president or vice-president, and cashier thereof." This contract, not having been executed in this manner, is not, therefore, binding on the association.

2. That no usage or course of practice has been shown in this case, to subject the association, within the decisions in the cases of *Bulkley* v. *The Derby Fishing Company*, 2 *Conn. Rep.* 252. *Witte* v. *The Derby Fishing Company*, 2 *Conn. Rep.* 162. *The Merchants' Bank of Alexandria* v. *The Bank of Columbia*, 5 *Wheat.* 326.

3. That neither the bank, nor the defendants in this suit, are estopped by law, from denying the validity of the writing in question. In the first place, the bank is not estopped, because the act authorizing it is a mere enabling act ; and it can contract only in the mode authorized by its charter. See the authorities above cited. Also, *The Penn Steam Navigation Company* v. *Dandridge*, 8 *Gill & Johns.* 319. The President, at most, is but an agent of the association, and can only bind the principal, while acting within the apparent scope of his authority. The safety of the institution, and also of the public, requires, that the contract should be signed both by the president and the cashier. Secondly, the defendants are not estopped, because they, as indorsers, warrant only the validity of such notes as are valid apparently upon their face ; and this is not of that description. *Wilkinson* v. *Lutwidge*, 1 *Stra.* 648. *Price* v. *Neal*, 3 *Burr.* 1357. S. C. 1 *Bla. Rep.* 390. *Bass* v. *Clive*, 4 *Mau. & Selw.* 15. S. C. 4 *Petersd. Abr.* 513. *Free* v. *Hawkins*, *Holt's N. P. Ca.* 550. *Burrill* v. *Smith*, 7 *Pick.* 291. *Codwise* v. *Gleason*, 3 *Day* 12. 2 *Stark. Ev.* 267. *Bayl. Bills*, 489.

4. That allowing the writing in question to be a promissory note and valid, and warranted as such, by the indorsement, it is the note of *Wheeler*, and warranted as such, and not the note of the bank, nor warranted as such. In the first place, it was so treated by the notary public, who protested it, and gave the defendant *Bulkley* notice of such protest. Secondly, by the charter of the association, (the statute referred to,) *Wheeler* exceeded his authority in attempting to bind (if he did so attempt) the association, and has thereby bound himself personally. Thirdly, if this was the note of *Wheeler*, days of grace were allowable upon it, and it was prematurely presented and protested for non-payment.

5. That if this was not the contract of *Wheeler*, but a note, check or draft of or upon the *Chelsea Bank*, whether it was entitled to grace or not, it was prematurely presented and protested. If entitled to grace, it became payable on the 4th of *December ;* and if not so entitled, on the 2nd of *December*, and not before. *Avery* v. *Stewart*, 2 *Conn. Rep.* 69. *Salter* v. *Burt*, 20 *Wend.* 205.

6. That the evidence of the law of the state of *New-York*,

which was before the jury, consisting entirely of the decision of the superior court of the city of *New-York* in the case of *Osborne* & al. v. *Smith*, and of the decision of the supreme court of that state in the case of *Salter* v. *Burt*, together with the case of *Avery* v. *Stewart* in our own court, the judge should have charged the jury that they ought to deem the evidence conclusive of the law of *New-York*, as claimed by the defendants.

7. That evidence of the local usage in the city of *New-York*, ought not to have been received, because it went to controul the general law of the state of *New-York*, and also to vary and contradict the legal import of the instrument. *Homer* v. *Dorr*, 10 *Mass. Rep.* 28. *Edie* v. *The East India Company*, 2 *Burr.* 1216. *Aymar* v. *Astor*, 6 *Cowen* 266. *Brown* v. *Jackson*, 2 *Wash. C. C. Rep.* 24. *Winthrop* v. *The Union Insurance Company*, 2 *Wash. C. C. Rep.* 9. *Case of the Schooner Reeside*, 2 *Sumn.* 568.

8. That the assignment of the defendants did not constitute a check or draft upon the bank.

*Strong* and *Rockwell*, contra, contended, 1. That the writing in question was a negotiable promissory note. In commercial contracts, a less strict adherence to mere form is required, and courts regard the substance of the contract more than in other contracts. *Byles on Bills*, 34. *Morris* v. *Lee*, 1 *Stra.* 629. S. C. 2 *Ld. Raym.* 1396. *Chadwick* v. *Allen*, 2 *Stra.* 706. *Cashborne* v. *Dutton*, 1 *Selw. N. P.* 363. *The People* v. *Finch*, 5 *Johns. Rep.* 237. *Russell* v. *Whipple*, 2 *Cowen* 536. *Kimball* v. *Huntington*, 10 *Wend.* 675. *Smith* v. *Allen*, 5 *Day* 337. *Shuttleworth* v. *Stevens*, 1 *Campb.* 407. *Allen* v. *Mason*, 4 *Campb.* 115. *Gray* v. *Milner*, 8 *Taunt.* 739. *Van Staphorst* & al. v. *Pearce*, 4 *Mass. Rep.* 258.

2. That if not a promissory note, it may be considered as a check, drawn by the indorsers on the *Chelsea Bank*, in favour of the indorsee, and certified or accepted by the bank. In the first place, generally, a promissory note, when indorsed, is in the nature of a bill of exchange ; the indorser being the drawer ; the maker, the drawee or acceptor ; and the indorsee, the payee. Secondly, by taking the writing on its face and on the back of it together, such appears to be the real contract of

the parties.   See *Van Staphorst* v. *Pearce,* 4 *Mass. Rep.* 258. Thirdly, a note or bill, not on its face payable to bearer or order, if indorsed payable to the order of the indorsee, becomes negotiable.   Fourthly, an inland bill of exchange, drawn on a bank, is, in effect, a bank check ; and in this case, either an accepted bill, or a certified check.

3. That no inference favourable to the defence is to be drawn from the *form* of the indorsement.   In the first place, no particular form of words is necessary to constitute an indorsement.   Secondly, it appears, by the evidence introduced by the defendants, and relied upon by them, that this was an *accommodation* indorsement, the very object of which was, to add to the security of the paper, by giving the personal responsibility of the indorsers.   *Chitt. Bills* 219.   It was plainly the intention of these parties, not merely to *transfer* the paper, but to *guaranty* it ; and that may as well be shown, by extraneous facts, as the transferable quality ; *a fortiori* when the *defendants* introduce the proof, showing the intention of the parties.   Thirdly, the object of all the ordinary forms of indorsement, is, simply, to transfer the interest in the paper ; and the expression, "*pay to the order,*" &c. includes, by implication only, that which in this case is fully expressed.   The transfer of the interest, in this case, necessarily includes an order to pay.   Fourthly, the liability of the indorser does not, in any case, arise from any contract *expressed* in any of the ordinary forms, but from the contract which the law *implies,* and attaches to the assignment of the paper.   Fifthly, the nature and object of a special indorsement, is, to transfer the interest in the bill, to the person named in the indorsement. 1 *Selw. N. P.* 261.   At an early period, it was holden, that an indorsement of the name only did not transfer the property ; (*Lucas* v. *Haynes,* 1 *Salk.* 130.) but it was never claimed, that a full and formal assignment *diminished* the liability of the indorser.   Sixthly, even if there had been no negotiable words in the indorsement, yet as between the indorser and indorsee, the assignment and liability and negotiability are all secured, by such an indorsement.   *Chitt. Bills* 219. note *m.* and (1.)   4 *Mass. Rep.* 258.   Seventhly, the indorser cannot be relieved from his implied liability, except by the express contract of the parties, and the use of such words as " without recourse," " to my use," &c., or words equivalent.   *Cowles*

v. *Harts* & al. 3 *Conn. Rep.* 516. 522.    *Chitt. Bills* 136. (ed. 1836.)

4. That this was the note of the *Chelsea Bank*.   In the first place, the 21st section of the general banking law of *New-York* is not applicable to contracts of this description. Secondly, it would not be competent to the *Chelsea Bank*, in a suit *against* that institution, to set up this defence.   *Bulkley* v. *The Derby Fishing Company*, 2 *Conn. Rep.* 252. 254. 256. 257.    *Witte* v. *The Derby Fishing Company*, 2 *Conn. Rep.* 260.    *Danforth* v. *Schoharie Turnpike Company*, 12 *Johns. Rep.* 230.   Thirdly, in a suit by the indorsee against the indorser, the indorsement is a warranty by the indorser, that the instrument is valid, and what on its face it purports to be ; and no proof is required of the execution or genuineness of the paper, by the plaintiff.   Nor, indeed, was any proof admissible on the part of the defendants in this case, to show it to be from any cause void.    *Chitt. Bills* 628.   2 *Phil. Ev.* 17. 22. 53. n. 76.    *Lambert* v. *Pack*, 1 *Salk.* 127.   2 *Stark. Ev.* 267.    *Codwise* v. *Gleason*, 3 *Day* 12.    *State Bank* v. *Fearing*, 16 *Pick.* 533.    *Burrill* v. *Smith*, 7 *Pick.* 292.

5. That the charge in relation to the time, when, by the law of *New-York*, the paper in question became payable, was correct.   In the first place, by the general commercial law, negotiable paper, which, without grace, falls due on *Sunday*, is payable on *Saturday*, and not on *Monday;* and the decision of the supreme court in the case of *Salter* v. *Burt* is not to be extended beyond the precise facts in that case.    *Byles on Bills*, 122.    *Roscommon on Ev.* 158.    *Barker* v. *Parker*, 6 *Pick.* 81.    *Osborne* & al. v. *Smith*, *cor.* superior court of the city of *New-York*.   Secondly, the defendants cannot object to the charge.   The only evidence of the peculiar law of *New-York* was the two decisions of the supreme and the superior courts ; and the judge declared the former to be *higher evidence of the law* than the latter.   He also gave the jury his opinion on the question of fact, that the law of *New-York* was as claimed by the defendants.

6. That the charge as to usage was correct.   In the first place, the general rule in relation to usage stated in the charge, is the strictly correct rule.    *Halsey* v. *Brown*, 3 *Day* 346. *Barber* v. *Brace*, 3 *Conn. Rep.* 9.   3 *Phil. Ev. by Cowen*, 1412.    *Hartford Bank* v. *Stedman* & al. 3 *Conn. Rep.* 489.

*Middlesex,*
*July, 1841.*

Kilgore
*v.*
Bulkley.

*Renner* v. *Bank of Columbia,* 9 *Wheat.* 581.   *Jones* v. *Fales,* 4 *Mass. Rep.* 245.   *Lincoln and Kennebeck Bank* v. *Page,* 9 *Mass. Rep.* 155.   *Blanchard* v. *Hillard,* 11 *Mass. Rep.* 88. *Widgery* v. *Monroe,* 6 *Mass. Rep.* 450.   *Whitwell* v. *Johnson,* 17 *Mass. Rep.* 452.   *Loring* v. *Gurney,* ·5 *Pick.* 16. *Bank of Utica* v. *Smith,* 18 *Johns. Rep.* 230.   *Mills* v. *Bank of the United States,* 11 *Wheat.* 431.   *Bank of Washington* v. *Triplett,* 1 *Peters* 25. 32. 34.   *Van Ness* v. *Pacard,* 2 *Peters* 137. 139. 148, 9.   *United States* v. *Arredondo,* 6 *Peters* 715.   *Osborne* & al. v. *Smith, cor.* superior court of the city of *New-York.*   Secondly, the proof on these points does not contradict or vary the express terms of the contract. Days of grace have originated in, and are constantly varied by, the customs of different places and countries.   As the contract cannot be performed, according to its terms, on *Sunday,* usage must determine whether it is to be performed on *Saturday* or *Monday.*

7. That the notice was sufficient.   The jury have decided the question of fact, under a correct charge from the court. *Chitt. Bills,* 365.   *Byles on Bills,* 156.   *Reedy* v. *Seixas,* 2 *Johns. Ca.* 337.   *Smith* v. *Whiting,* 12 *Mass. Rep.* 6.   *Mills* v. *Bank of The United States,* 11 *Wheat.* 431.   *Rochester* v. *Gould,* 9 *Wend.* 279.

8. That the suit is properly brought in the name of the commissioners of the *Ohio Canal Fund.   Buffum* v. *Chadwick,* 8 *Mass. Rep.* 103.

9. That the indorsement being "*for value received,*" a recovery may be had upon the money counts.

STORRS, J.   It is admitted, that the indorsement, by the defendants, of the instrument in question, imposed on them a liability to pay to the plaintiffs the sum therein mentioned, provided a legal demand of payment was made, when due, and payment refused, and legal notice of such non-payment given to the defendants : and it is upon the legality of the demand and notice that the various questions arise in this case. The defendants claim, that the demand of payment was not made of the proper persons, nor at the proper time ; and that the notice of non-payment was not given to the proper persons, nor at the proper time, nor in legal form.   If the demand was legally made, there is no objection to the notice, except to its form.

The declaration counts on an indorsement, by the defendants, of a promissory note, made by the *Chelsea Bank*, and also on a draft or order on said bank, by the defendants. It also contains the common money counts, which, as no question arises on them, may be laid out of view.

The instrument in question is conceded, by the counsel for the defendants, to be a promissory note ; but the result to which the court has come would be the same, whether it is to be considered as a note, or, in connexion with the defendants' indorsement, an accepted draft or order, or, as it is otherwise termed, a certified check ; provided it is a note of the bank, in the one case, or a draft or check on the bank, in the other. The defendants insist, that the bank is neither the maker nor the drawer. If this be so, it results, that the demand was improperly made, since it was made upon the bank alone.

That the instrument, on its face, imports to be made by the bank, there can be no doubt. It is dated at the bank ; it is signed by *Wheeler*, officially, as president of the bank ; and it states the deposit of the sum mentioned in it, and which is to be repaid, to have been made in the bank. If, therefore, there is no want of authority to execute the instrument on behalf of the bank, it is binding upon it, and is to be deemed its obligation. A deposit, merely, in the bank, without any certificate, would raise an implied promise by the bank to repay. An express promise to that effect, whether verbal or written, by any person authorized in fact or law to make it, is, of course, obligatory. And the indorsement on the back of this instrument imports an order or draft, by the defendants, on the maker, and is a direction to such maker to pay the contents to the indorsees, which constitutes it a bill of exchange, and imposes on the parties the ordinary liabilities attached to that kind of paper.

It is, however, claimed, by the defendants, that this instrument, not being signed by the cashier, as well as the president, of the *Chelsea* banking company, is not obligatory upon that institution, since it is not in conformity with the law of the state of *New-York*, under which it went into operation, the 21st section of which provides, that " *contracts made by any such [banking] association, and all notes and bills by them issued and put into circulation as money, shall be signed by*

the president, or vice-president, and cashier thereof:" and that it is, therefore, the note of *Wheeler* personally, and binding on him alone.

It is our prevailing opinion, that, by the true construction of this provision, it applies only to such contracts, notes and bills, as are made and intended to be used as a *currency*. It is susceptible of that meaning fairly, and without doing any violence to the language used or its grammatical connexion ; while to hold that it embraces also every express contract, of whatever description, or for whatever purpose, which these banking associations might, in the course of their business, have occasion to make, would constantly be productive of the most serious inconvenience and embarrassment : and the operation of it must be thus unlimited, unless it is confined to paper put into circulation as money. With regard to such paper, the requisition of the signatures of the two principal officers of the institution might have been, and probably was, considered as a necessary, or at least a proper, security to the public, as well as the stockholders. But we can conceive of no possible utility in extending it to all the other bargains and arrangements, including even the most unimportant, which these companies, from time to time, and perhaps daily, might find it necessary to make. And it is at least as consonant with the very language used thus to restrict it to a particular species of contracts, as to extend it to those of every description.

It is not, however, necessary to settle the construction of this part of the *New-York* banking law. If the claim of the defendants respecting it is correct, it will not relieve them.

In the first place, if that provision of the law is to be deemed applicable to the paper in question, it is well settled in the cases of *Bulkley* & al. and of *Witte* v. *The Derby Fishing Company*, 2 *Conn. Rep.* 252. 260., that, however it might be, when a bank, or other corporation of a similar nature, authorized by their act of incorporation to contract in a particular mode, was endeavouring to enforce a claim founded on an instrument not executed in that mode ; yet, that they may, by a course of practice, render themselves liable on such instruments. The first of those cases was an action on a policy of insurance, and the other on a bill of exchange. By the act of incorporation, it was required, that the first should

be " signed by the president, or, in his absence, by the assistant, and countersigned by the secretary ;" and that the other should be " signed by the president, and countersigned by the secretary." The instruments, in both cases, were signed by the president alone. The last of those cases is precisely in point.

Secondly, this paper does not shew, that it was executed by a bank organized under the act of *New-York,* which has been produced ; and therefore, no defect is apparent on its face. The law is indeed a public act, but the organization of the institutions under it, is not public ; and it is only to a particular kind of banks in that state, that the act is applicable.

The instrument, therefore, was not necessarily unavailing against the bank, but might be valid, consistently with what appeared on its face.

But, in the last place, it is not competent for the defendants, in this action, to set up the invalidity of the instrument on account of the incapacity of the bank to make the contract embraced in it. By their indorsement of that instrument, they must be held to have warranted not only its genuineness, but its validity. Such indorsement constituted a draft on the bank, in favour of the plaintiffs ; and to permit the defendants now to raise this defence, would be opposed, as well to the whole current of legal authorities, as to good faith, and the policy upon which the principles established with regard to the negotiation of such paper is founded. As between the indorser and holder of negotiable notes, the former is not allowed to avail himself of the infancy or coverture of the maker, nor the forgery of his name, nor his incapacity to contract. *Haly* v. *Lane,* 1 *Atk.* 181. *Taylor* v. *Croker,* 4 *Esp. Rep.* 188. *Codwise* & al. v. *Gleason* & al., 3 *Day* 12. *Smith* v. *Chester,* 1 *Term Rep.* 654. *Price* v. *Neal,* 3 *Burr.* 1354. *Smith* & al. v. *Mercer* & al. 6 *Taun.* 76. *The State Bank* v. *Fearing,* 16 *Pick.* 533. *Free* & al. v. *Hawkins, Holt's N. P. Ca.* 550. *Chitt. Bills* 377. *Bayl.* 219. *Chitty,* in his treatise on *Bills,* (*p.* 106.) says, " the act of drawing a bill implies an undertaking from the drawer to the payee, and to every subsequent holder, fairly entitled to the possession, that the person on whom he draws, is capable of binding himself by his acceptance, and that he will pay it, when it becomes due, if presented in proper time for that purpose."

*Middlesex,* July, 1841

Kilgore *v.* Bulkley.

*Middlesex,*
*July, 1841.*

*Kilgore*
*v.*
*Bulkley.*

It is not necessary for the holder to enquire for what reason the bill was not paid. *Mellish* & al. v *Simeon*, 2 *H. Bla.* 378. In *Barrell* v. *Parker*, 7 *Pick.* 294. which was an action by the indorsee against the indorser of a note, signed by one who had been duly empowered for that purpose, by the maker, as his attorney; the maker, however, having, without the knowledge of the attorney or defendant, died before the making of the note; it was held, that the defendant was liable. Ch. J. *Parker*, in giving the opinion of the court, says: " The indorser always warrants the existence and legality of the contract which he undertakes to assign. The indorsee takes it on the credit chiefly of the indorser." " The indorser is not at liberty to deny the validity of the contract which he has assigned, for the purpose of disputing his own liability." " The indorser must take the risk of the validity of the note which he assigns. He gives currency to it: in fact, warrants its genuineness, in respect of the indorsee." It is unnecessary to consider whether, if the making of this instrument by the bank was prohibited, and thus made illegal by the laws of *New-York*, on the ground of public policy, so that in the language of Lord *Ellenborough*, in *Atkinson* v. *Ritchie*, 10 *East*, 530. " the contract would not be capable of being performed without a criminal compromise of public duty," the defendants could avail themselves of this circumstance against the plaintiffs, since, in our opinion, the law of *New-York* is not of this character.

The counsel for the defendants have endeavoured to assimilate this, to those cases where the accommodation maker, acceptor or indorser has been permitted to defend against an indorsee taking negotiable paper, not *bona fide*, nor in the course of mercantile business. There is, however, no analogy between those cases and the present. The connexion between the defendants and the *Chelsea Bank* would, of itself, render the principle of those cases wholly inapplicable. As stockholders of that bank, the defendants received the benefit of the consideration for the indorsement in question. They were part owners of the property which was bought on the strength of the indorsement; and it was made for the very purpose of such purchase. There is no principle of law or justice, by which, under such circumstances, the defendants

can absolve themselves from the obligation which such indorsement imposed. *Smith* v. *Knox*, 3 *Esp. Rep.* 47.

The demand, therefore, was properly made on the *Chelsea Bank*.

The next enquiry relates to the time when the paper in question became due, and therefore when payment of it should have been demanded.

The court was correct in informing the jury, that the case was to be governed by the law of the state of *New-York*, and in submitting to them on the evidence the question what that law was.

This paper fell due, by its terms, on the 1st day of *December*, which happened to be *Sunday ;* and one of the questions between the parties was, whether, by the general law of the state of *New-York*, it was payable on the preceding *Saturday*, or subsequent *Monday.* To prove such general law on this point, the evidence consisted of two decisions in the state of *New-York ;* one by the superior court of the city of *New-York*, having a local jurisdiction in said city, and the other by the supreme court of that state, a court of general jurisdiction throughout the state, and although not the court of the last resort, yet having jurisdiction to revise and correct the decisions of said superior court, together with a decision in our own supreme court, referred to, in the case last-mentioned. The defendants insisted, that the decision of the supreme court of the state of *New-York* was to be deemed conclusive evidence of the law of that state. The court, however, did not so charge the jury ; but stated to them, that it was higher evidence, and entitled to greater weight, than that of the superior court. This is the most that the defendants had a right to claim. The decisions, introduced for the purpose of proving the law of *New-York*, had no artificial or arbitrary force or effect attached to them. It has been truly said, that precedents are not the law itself, but only evidence of the law ; and such precedents, when introduced as mere evidence of law, are to be weighed like other evidence. The record of a judgment is indeed conclusive evidence of the facts on which it is founded ; but the idea that the decision by any court, however respectable, on a question of law, is not to be re-examined or questioned, is entirely novel. And there is nothing in the relative situation of these two courts, whose

decisions were supposed to be at variance, to entitle the opinion of one to any authoritative or binding effect on the other. The exception to this part of the charge, therefore, is not well founded.

The defendants, claiming to have proved, that, by the general law of *New-York,* paper of the description of that in question was entitled to the usual allowance of grace, and that, when happening to fall due by its terms on a *Sunday,* it became payable on the *Monday* succeeding, except to the admission by the court below of evidence offered by the plaintiffs to shew, that, by the usage and custom prevailing in the city of *New-York,* such paper was not entitled to grace, and that when so falling due on *Sunday,* it became payable on the preceding *Saturday.*

The question, how far evidence of usage is admissible to shew, that, as to a particular species of negotiable paper, it is entitled, not to the usual number of days of grace allowed by the general law, but to a greater or less number, has received the most deliberate consideration of our courts of the highest authority, especially on commercial questions, and is most explicitly and decisively settled. In *Renner* v. *The Bank of Columbia,* 9 *Wheat.* 582. which was a suit against an indorser of a promissory note negotiated in the bank of *Columbia,* where payment was demanded and the note protested, on the fourth day after that mentioned in the note as the day on which it was payable, evidence was offered and admitted to shew, that this was in conformity with the custom of the bank, although it was admitted, that, by the general law, negotiable paper was entitled to only three days of grace ; and, upon exception taken to this decision, it was, on great deliberation, affirmed. In this case, the custom was known to the parties to the note. The same point arose afterwards, in the case of *Mills* v. *The Bank of the United States,* 11 *Wheat.* 430. where the custom was not known to the parties ; and there also it was held, that proof of such custom was admissible. The court say, that " when a note is made payable and negotiable at a bank, whose invariable usage is, to demand payment and give notice on the fourth day of grace, the parties are bound by that usage, whether they have a personal knowledge of it or not. In the case of such a note, the parties are presumed, by implication, to

Middlesex,
July, 1841.

Kilgore
v.
Bulkley.

agree to be governed by the usage of the bank at which they have chosen to make the security itself negotiable." In *The Bank of Washington* v. *Triplett*, 1 *Peters* 25. the same court sanction these cases, and decide further, that the same presumption exists in the case of a bill drawn on a person residing in a place where such usage was established, which was placed in such bank for collection, although it did not purport to be payable and negotiable in that bank. In *Jones* v. *Fales*, 4 *Mass. Rep.* 245. it was held, that, in the case of a note entitled by the general law to three days of grace, a demand upon the maker on the first, and a notice of non-payment to the indorser on the last day of grace, if in conformity with a usage at the bank where it was payable, would hold the indorser. Ch. J. *Parsons*, in giving the opinion of the court, says : " This usage is evidence of the defendant's agreement, proper to be submitted to the jury to infer from it the agreement of the defendant. Evidence of this kind and for this purpose, is not to establish new law, but to prove, that the defendant has waived a condition implied by law for his benefit, and has consented to other terms, to which, without question, he might have expressly agreed." This case was subsequently sanctioned, in *Widgery* v. *Monroe*, 6 *Mass. Rep.* 459. and in *The Lincoln & Kennebeck Bank* v. *Page*, 9 *Mass. Rep.* 155. In *Blanchard* v *Hilliard*, 11 *Mass. Rep.* 85. it was held, that, on a note payable with grace, a demand on the maker on the day preceding the day when it was by its terms made payable, and a notice to the indorser on the day preceding the last day of grace, was good, if conformable to the practice of the bank at which it was payable. See also *Whitwell* v. *Johnson*, 17 *Mass. Rep.* 452. In *Osborne & Sistare* v. *Smith*, decided in 1837, by the superior court of the city of *New-York*, it was held, by that respectable tribunal, (whose decisions, especially on questions of commercial law, are entitled to great weight,) that evidence of a usage in the city of *New-York* was admissible to prove, that a check on a bank in that city, payable on a day subsequent to its date, was not entitled to days of grace ; and that, therefore, a demand and protest on the day mentioned in it for its payment, would subject the indorser. Ch. J. *Jones*, delivering the opinion of the court, (of which, a manuscript copy has been furnished us,) says : " The objection to the custom,

*Middlesex,*
*July, 1841.*

Kilgore
*v.*
Bulkley.

drawn from its supposed collision with the rules of the common law, cannot, in our views of it, be sustained, without impugning some of the best settled principles applicable to mercantile law. Usages constitute a large portion of commercial rules; and to that source solely, the allowance of days of grace on mercantile paper is to be traced. No rule of common law or statutory provision impressed that feature upon the character of commercial paper. It had its origin in usage, and to usage it owes its existence. It has now become, it is true, where it is applicable, parcel of the contract, and is no longer an indulgence of grace, but is, and long has been, a matter of right. A bill or a note payable at 60 days, is, in its legal effect, payable at 63 days; but this custom does not apply to every species of commercial paper. In its application to bills, it does not exist at all places; and it varies, moreover, at different places, in the time or grace it allows: and this case shews, we think, that with us it does not embrace checks on banks, though made payable at a day certain subsequent to their date, and notwithstanding their resemblance to inland bills of exchange." And, after pointing out the difference between inland bills and checks, he continues: "Without dwelling upon these distinctions, we are satisfied, that if inland bills and checks are to be regarded as substantially alike, yet a usage or custom may well exist, by which grace would be denied to the one, though allowed to the other. The allowance of grace is wholly the child of usage; and a custom or usage that a particular species of paper or inland bills shall be payable without grace, is just as admissible and equally valid, as a custom or usage that another species of paper or inland bills shall be entitled to grace. The usage or custom which excludes grace, certainly does not more impugn or qualify the general rules of the law merchant or of the common law, than the custom which allows it; and yet the custom which allows it, is acknowledged to be valid." To these no opposing cases have been cited. We think, therefore, that on the authorities, the point is settled in favour of the admission of the evidence of usage on the subject of the allowance of grace.

It is admissible also, upon the principles on which courts generally admit evidence of this description. The object of allowing evidence of local usage or custom, is, usually, to as-

certain and carry into effect the intention of the parties ; for when it appears, that there exists, at the place where the contract is to be performed, a usage so well settled, so uniformly acted upon, and of so long continuance, as to raise a fair presumption that it was known to the parties, it is reasonable to presume, that the contract was made with reference to such usage and in conformity with it ; and it, therefore, forms as much a part of the contract as if it had been expressly incorporated with it.  *In contractibus tacite veniunt ea, quæ sunt moris et consuetudinis.*  To ascertain the usage, therefore, is one mean of arriving at the intention of the parties, and most conducive to the ends of justice, since it is the object of courts to ascertain and carry into effect the meaning of the parties. Experience and observation prove, that the engagements of individuals are in fact entered into with reference to the customs and usages which prevail in the community where they are made : they therefore tacitly agree to conform to them : and, so far from doing injustice, by regarding such customs and usages, it is the only mode by which justice can be attained. The presumption is, indeed, that those who enter into contracts, intend to be governed by the general principles of law. It is, however, competent for them to renounce those principles, where public policy does not forbid, and to adopt another rule of action ; and the prevalence of a particular local usage on the subject,  variant from those general rules, in the absence of evidence to resist it, affords a rational ground of inference that they intended to do so.

We think also, that evidence was admissible, to shew, that the paper in question, by the usage and custom prevailing where it was payable, became due on the *Saturday* preceding the day, when by its terms it was made payable, that day being *Sunday*.  Payment could not be exacted or tendered on the day, when by its terms it was made payable, since that day is not recognized by the law as one on which a contract can be performed ; and it must therefore be made, either on the day preceding or subsequent.  The terms of the contract, therefore, in this case, as to the time of its performance, are wholly indeterminate ; and the case falls within the class of cases in which evidence of usage is deemed peculiarly proper, in order to ascertain the meaning of the parties.  Such evidence does not contradict the sense of the instrument, as ap-

*Middlesex,*
July, 1841.

Kilgore
*v.*
Bulkley.

*Middlesex,*
July, 1841.

Kilgore
*v.*
Bulkley.

parent on its face. There is no substantial reason why the day subsequent to that expressed for its performance should be preferred to that next preceding. As a general rule of construction, it is indeed settled, that, when the time expressed by a contract for the payment of a sum of money, happens to be *Sunday,* it shall be made on the succeeding day. This rule is, however, founded mainly on convenience and policy. But ordinary negotiable mercantile paper, entitled to grace, forms an exception to this rule, it being equally well settled, that such paper, when it happens to fall due by its terms on a *Sunday,* shall be payable on the preceding *Saturday.* This exception was founded originally on mercantile usage merely, and when such usage became universal, it was established, like the usage which allows grace as a rule of law applicable to contracts of that description. If, by the general law, such paper, when not entitled to grace, follows the rule that applies to contracts generally, and would be payable on *Monday,* (which, for the purposes of the present question, must be assumed,) there seems to be no sensible reason why it may not be shewn, as evidential of the intention of the parties, that a particular species of such paper, by a usage or custom at the place where it falls due, is payable on the *Saturday* preceding the day, when by its terms it is made payable, with the same propriety as in the case of such paper which is entitled to grace. The argument, that the legal import of the contract is varied, by evidence of this description, is no less applicable to the latter than the former. We do not think, however, that the testimony of usage, which was received, in this case, is obnoxious to the objection, that its effect is to vary, by parol evidence, the written contract of the parties, and that its admission is, therefore, a violation of the rule of law, that parol evidence is not admissible to contradict, or substantially vary, the legal import of a written agreement, within the correct understanding of that well settled and salutary rule. As remarked by *Thompson,* J. in delivering the opinion of the court in *Renner* v. *Bank of Columbia,* 9 *Wheat.* 581. 588. "Evidence of usage or custom is never considered of this character; but is received for the purpose of ascertaining the sense and understanding of parties, by their contracts, which are made with reference to such usage or custom; for the custom then becomes a part of the contract, and may not improperly be con-

sidered the law of the contract; and it rests upon the same principles as the doctrine of the *lex loci*. All contracts are to be governed by the law of the place where they are to be performed; and this law may be, and usually is, proved as matter of fact. The rule is adopted for the purpose of carrying into effect the intention and understanding of the parties." It is presumable, in the present case, that neither of the parties to the paper in question adverted to the circumstance that it would, by its terms, fall due on *Sunday*; and it is much more reasonable to believe, that they intended to be governed by the custom prevailing in such a case, than that they had in view any merely arbitrary rule adopted as to other kinds of contracts. Indeed, in those cases where a rule of construction is adopted, not with reference to the actual intention of the parties, as apparent on the face of the contract, but on artificial or arbitrary grounds, we see no satisfactory reason why usage or custom, to which it may rationally and fairly be believed, that the parties intended to conform, may not be shewn, as evincing their intention; and this is a case of that character. Many of the cases on this subject are much stronger than the present. Without noticing them in detail, we would refer to *Wilcox* v. *Wood*, 9 *Wend.* 346., where it was held, that proof is admissible of a local custom that a lease from the first day of *May* in one year to the first day of *May* in the succeeding year, expires at noon of the last day; and to *Cowen's* notes 957. 974. and 975. to *Phillipps' Evidence*, where those cases are brought together.

*Middlesex,*
*July, 1841.*
Kilgore
*v.*
Bulkley.

The only remaining exception to the proceedings below relates to the charge on the subject of the form of the notice of non-payment. This objection has not been strongly pressed; and we think that the subject was placed on the correct ground. The rule given to the jury, was just, reasonable and intelligible; and is fully sustained, by the authorities. *Reedy* v. *Seixas*, 2 *Johns. Ca.* 337. *Mills* v. *The Bank of the United States*, 11 *Wheat.* 431. *Bank of Rochester* v. *Gould*, 9 *Wend.* 270. *Chitt. Bills*, 365. *Byles*, 156.

A new trial, therefore, should not be granted.

In this opinion the other Judges concurred.

*New trial not to be granted.*