## LINDSEY VS. McCLELLAND.

A certificate of deposit payable in "current funds," is not negotiable paper.

*It seems* that such an instrument payable in money, possesses all the requisites of a negotiable promissory note; and, as between the indorser and indorsee, the latter is held only to *reasonable* diligence in presenting it for payment.

There is much reason for saying that the parties to a negotiable certificate of deposit do not contemplate an immediate demand of payment; and hence an indorsee may not be held (as against the indorser) to the same degree of diligence in presenting it for payment as the law requires in other cases.

Where the payee of a note, after it fell due, surrendered it to the maker on receiving from him a certificate of deposit (payable in current funds) for a part of the amount due, and the remainder in cash, but on presenting the certificate at the bank, five or six days afterwards, was refused payment, the bank having failed in the meantime: *Held*, that the payee was entitled to recover the amount against the maker of the note, unless it appeared that he had expressly agreed to take the certificate in payment of his debt.

APPEAL from the Circuit Court for *Green Lake* County.

Action on a note made by defendant to plaintiff, April 16, 1861, for $230 at thirty days, with interest at 10 per cent.; on which there was claimed to be due a balance of $217, with interest from June 20, 1861. Answer, general denial, and payment. On the trial, the plaintiff, as a witness in his own behalf, testified to the execution of the note for money loaned by

him to defendant, and added: "About the middle of June, 1861, defendant came to me to pay me the amount of the note, and brought a certificate of deposit on the Berlin Bank for $217. I hesitated about taking it; told him I did not know anything about the bank; he thought the bank was very good; I told him anything they would take at the Ripon Bank, where I was depositing money, I would receive. I took the certificate and indorsed the amount of it upon the note. This was on Thursday or Friday.. On Saturday I presented it to the Bank of Ripon; the cashier would not take it. On Monday or Tuesday I went to the defendant to have him take it back; but he was not at home. I went to Berlin, and ascertained that the bank had shut up. I got it protested. * * * Some time after that I was at defendant's, and saw him; desired him to take the certificate back and pay the money, but he refused." On cross-examination, the witness said: "I think I went to Berlin June 26th—the date of the protest. Did not make any demand at the bank until that day, nor on defendant until after it was protested. I lived some ten miles from Berlin. I think the balance of the note was paid before I went to Ripon. John, the defendant's son, brought me the balance, and I delivered him the note at the time. Some weeks afterwards I saw the defendant at his house; some of his boys were present; I told him I had taken the certificate conditionally, and he asked me why I had not protested it; I told him I had." The note and the certificate of deposit, with protest, were put in evidence. The certificate was payable "in current funds," to defendant or his order, and was indorsed by him. Defendant, as a witness on his own behalf, testified: "I think it was on Monday, the 20th of June, 1861, I went to plaintiff, took out the certificate and laid it on the table, and said I wanted my note. He said he did not know whether he could deposit the certificate with Brockway [cashier of the Bank of Ripon] or not. * * I said, if he did not like to take the certificate, I would go to Berlin and get

the money and pay it to him; then he took it and made the indorsement on the note. The bank went down on Monday, the 24th, I think, and I paid the balance of the note on Tuesday following, and got the note. I think it was in the same week, I was told that plaintiff had been at my house to see me. I think it was some six or eight weeks after I gave him the certificate that I saw him again. John was present. Plaintiff wanted I should take the certificate back, and pay him the money. I refused to take it. He did not claim that he had taken it conditionally, but that it was bogus. I got it for the purpose of paying plaintiff." John McClelland, for the defendant, testified as follows : "Defendant sent me with the money to pay plaintiff on the note. I paid him what he claimed to be due, and took up the note. I think it was June 25th, on Thursday [Tuesday.] I was present at the interview of the parties some weeks after. Plaintiff wanted defendant to take the certificate back. Do not recollect that he stated that he took it on condition." The plaintiff, being recalled, testified as follows : "In the conversation at defendant's house, I told him that I took the certificate on condition that Brockway would take it. He asked me why I had not presented it to Brockway. I told him I had. I received the balance of the note before I went to the bank with the certificate."

The defendant asked the court to instruct the jury that the plaintiff, by holding the certificate six days before presenting it for payment at the bank (the bank having in the meantime failed), made it his own, and the defendant was not liable for the loss. The court refused this instruction, and charged the jury that the law relating to commercial paper on questions of diligence did not apply to an instrument of this kind, and that if there was not an express agreement to take the certificate of deposit in payment, the plaintiff was entitled to recover. Verdict for the plaintiff, and judgment accordingly; from which the defendant appealed.

*John C. Truesdell,* for appellant :

It was not necessary that the parties should "expressly" agree that the certificate should be taken in payment. The jury had a right to infer such an agreement from the facts. Story on Prom. Notes, § 104, last clause, and cases there cited. The receipt of a promissory note of a third person will of itself operate to extinguish an original debt, unless otherwise intended by the parties. Story, § 438. The certificate was the promise to pay of a third person, and it should have been left to the jury to say whether the parties intended it to pay a part of the note. The plaintiff was bound to use proper and legal diligence to collect the certificate. By his neglect he made the certificate his own. Story, § 207, and note 1. The court erred also in instructing the jury that the law relating to commercial paper did not apply to cases of this kind.

*Hamilton & Perkins*, for respondent.

*By the Court*, COLE, J. The circuit court was most unquestionably right in holding that the law relating to bills of exchange and commercial paper on the question of diligence, did not apply to the certificate of deposit produced on the trial and read in evidence. That certificate was, by its very terms, made payable "*in current funds*," which this court held, in *Ford v. Mitchell*, 15 Wis., 304, rendered the instrument non-negotiable. It is not payable in money, or what the court is bound to consider as equivalent to money. See authorities cited in *Ford v. Mitchell*; Edwards on Bills and Promis. Notes, p. 134, et seq. Even if the certificate had been negotiable, it may be questionable whether the indorsee was guilty of laches in holding it five days before he presented it for payment. The prevailing opinion seems to be, that such an instrument, when payable in money, possesses all the requisites of a negotiable promissory note (*Miller v. Austen*, 13 How. (U. S.), 218; *Bank of Orleans v. Merrill*, 2 Hill, 295; *Kilgore v. Bulkley*, 14 Conn., 362; *Laughlin v. Marshall*, 19 Ill., 390; *The Bank of Peru v. Farnsworth*, 18 Ill., 563, and authorities cited in

those cases); and therefore it would be sufficient if the demand of payment be made within a reasonable time. This certificate of deposit bore date the 20th of June, and it was presented for payment on the 26th of the same month. Now there is much reason for saying that in an instrument of that nature neither the parties to it nor the indorser contemplates an immediate demand for the payment, and hence the holder may not be responsible for the use of the same degree of diligence as the law requires in other cases. For there would seem to be no object in depositing money in a bank with the intention of immediately drawing it out. And therefore we think there was no want of diligence in presenting this certificate to the bank for payment. The circuit court instructed the jury that the plaintiff was entitled to recover unless they found from the evidence that he had expressly agreed to take the certificate of deposit in payment of his debt. This instruction is in accordance with well established principles. The evidence in the case is most clear and satisfactory on the point that the certificate was not taken in payment of the pre-existing indebtedness. At all events the jury were properly instructed upon the law applicable to that defense.

We see no error in the record which would warrant a reversal of the judgment.

The judgment of the circuit court is affirmed.