## PAINE and another vs. VOORHEES and others.

CONTRACTS—PAYMENT :  *Whether taking debtor's note is payment, or suspends remedy on prior security.*
EXCEPTIONS :  *When general exception sufficient.*

1. It is settled in this state, that the taking of a debtor's promissory note, either for a precedent liability or for one incurred at the time, is no payment, unless expressly so agreed.

2. Where the creditor holds a bond as security for such indebtedness, the taking of the debtor's note does not of itself necessarily suspend his right of action on the bond, or discharge the surety therein.

3. Whether or not the acceptance of such a note would ordinarily create a presumption that the right of action was to be suspended until default made upon the note (a point not decided), still, where the creditor, at the time of such acceptance, clearly expressed his intention to hold the surety on the bond, this would sufficiently rebut any such presumption.

4. A general exception " to the conclusions of law," is sufficient where *all* those conclusions were erroneous.

APPEAL from the Circuit Court for *Dodge* County.

Action on a contract entered into by *T. V.* and *J. M. Voorhees* with the plaintiffs, and upon a penal bond given to secure its performance, in which said defendants *Voorhees* were principals, and defendant *Boyer* was surety.   The nature of the contract and the grounds of defense will sufficiently appear from the opinion.

The circuit court found the making of the original contract and of the bond as alleged in the complaint; and also found:   1. That on the 2d of November, 1868, the defendants *Voorhees*, being indebted to the plaintiffs, on said contract, in a sum exceeding $2,000, at plaintiffs' request gave their notes for an aggregate of $2,000, with interest at ten per cent., which were accepted by the plaintiffs in payment and extinguishment of $2,000 of said indebtedness; and it was then so understood and intended by and between the defendants *Voorhees* and the plaintiffs; and they were so received without the knowledge of *Boyer*.   4. That plaintiffs afterwards treated said notes as their own,

Paine and another vs. Voorhees and others.

turning the same out and depositing them with a bank in Oshkosh, and not withdrawing them therefrom until April, 1869. 5. That at the commencement of this action said notes were under the control of said bank, and were allowed to remain with it until April, 1869.* 6. That at the time of giving said notes there was due the plaintiffs from the defendants *Voorhees*, $2,293.08, and the notes were received as payment and extinguishment of $2,000 of that sum. 7. That there is now due from all the defendants in the action, $293.08. 8. That *Boyer* had no knowledge of, and never assented to, the execution of said notes. 9. That at the trial of this action plaintiffs tendered the notes for cancellation." As conclusions of law the court held : " 1. That by reason of the taking of the notes as aforesaid, *Boyer* was absolutely released from $2,000 of plaintiffs' claim. 2. That plaintiffs could not, in this action, recover for said amount of $2,000. 3. That plaintiffs were entitled to recover of all said defendants the sum of $293.08." Judgment accordingly.

The plaintiffs excepted " to the 3d, 4th, 5th, 6th, 7th and 8th findings of fact," and also "to all the conclusions of law ;" and appealed from the judgment.

*Freeman & Hancock*, for appellants, to the point that a specialty cannot be avoided or released by parol, and that in an action on the bond it is no defense to *Boyer* to show that time had been given the defendants *Voorhees* by an instrument not under seal, cited *Sewall v. Sparrow*, 16 Mass. 26 ; *Crane v. Newell*, 2 Pick. 612 ; *U. S. v. Howell*, 4 Wash. 620; *Fleming v. Gilbert*, 3 Johns. 528 ; *Langworthy v. Smith*, 2 Wend. 587 ; *Locke v. U. S.*, 3 Mason, 446 ; *Tate v. Wymond*, 7 Blackf. 240 ;

---

* The proof was, that the plaintiffs left with the bank the note which first fell due *for collection* simply ; and that at the same time they left the remaining notes with the bank, with their other papers, upon an understanding that, in case the note first due were paid, the bank should discount the others for him and pass the amount to his credit ; but the first note was never paid, and the others were never discounted.     Rep.

*Solomon v. Gregory,* 4 Harrison, 112. To the point that the taking of the notes was not a payment, they cited *Williams v. Starr,* 5 Wis. 534; *Blunt v. Walker,* 11 id. 334; *Ford v. Mitchell,* 15 id. 304; *Eastman v. Porter,* 14 id 39; *Webster v. Stadden,* id. 277; *Lindsey v. Mc-Clelland,* 18 Wis. 481; *Bates v. Rosekranz,* 37 N. Y. 409; *Gibson v. Tobey,* 53 Barb. 191. To the point that the burden was on the defendants to show that the notes were taken in payment, they cited 37 N. Y. 312; 4 Abb. N. S. 244; 35 How. Pr. 447.

*E. P. Smith,* for respondents, argued that there were no sufficient exceptions to the findings of fact (*Snyder v. Wright,* 13 Wis. 689); and that an exception in gross to all the conclusions of law was also insufficient. *Newell v. Doty,* 33 N. Y. 83; *Jones v. Osgood,* 2 Seld. 233; *Caldwell v. Murphy,* 1 Kern. 416; *Taft v. Kessell,* 16 Wis. 273; *Gillman v. Thiess,* 18 id. 528; *Smith v. Coolbaugh,* 21 id. 430; Voorhies' Code (9th ed.), 866; *Mayor of N. Y. v. Erben,* 24 How. Pr. 358. 2. If the notes were agreed to be received in payment, and did in fact give new rights to the creditor, that extinguishes *pro tanto* the demand on account. *Palmer v. Yager,* 20 Wis. 98. And such an agreement may be inferred from the surrounding facts and circumstances. 20 Wis. 100; *Eastman v. Porter,* 14 id. 39; *Webster v. Stadden,* id. 278; *Mehlberg v. Tisher,* 24 id. 607. Counsel argued upon the evidence that the notes were received in payment. 3. Apart from the question of payment, the effect of giving of the notes is two-fold. (1.) In consideration of the liquidation of the claim, and the advantage of having it in a negotiable form, the right of action is suspended on the original account, *pro tanto,* until the maturity of the notes. *Dolph v. Rice,* 21 Wis. 592; *Blunt v. Walker,* 11 id. 334; *Webster v. Stadden,* 14 id. 277; id. 96; *Ford v. Mitchell,* 15 id. 304; *Cumber v. Wane,* 1 Smith's L. C. 549 [*439]; 1 Am. L. C. (3d ed.) 192, 238, 274, 275, 305–309, 315; 1 Parsons on Con. 512, note. (2.) The giving of the notes is

*prima facie* evidence of an accounting and settlement of *all demands* between the parties, and that the makers were indebted to the payees upon such settlement, to the amount .of the notes. *Defreest v. Bloomingdale*, 5 Denio, 304; *Lake v. Tysen*, 2 Seld. 461; *Duguid v. Ogilvie*, 3 E. D. Smith, 527; 3 C. & H.'s Notes to Phillips' Ev. (3d ed.) p. 502, note 300. As a corollary, no suit can be maintained, based on the original account, unless plaintiff held the notes at its inception (1 Smith L. C. 394); and on the trial the notes must be produced and surrendered. 20 Wis. *supra.* 4. The rule being that any change of the original contract, without the consent of the surety, operates as a release from his obligation (1 Parsons on B. & N. 238), and this even though the change is not injurious to him (id. 239, and cases cited; *Miller v. McCan*, 7 Paige, 451; *McWilliams v. Mason*, 6 Duer, 276; 2 L. C. in Eq., Pt. 2, 361, 382), it follows that in this case *Boyer* was released from his bond to the amount of $2,000, and possibly from the full indebtedness accrued or to accrue under the contract. Am. L. C. (3d ed.) 287. It extended the time of payment, and suspended the remedy as to $2,000; and it changed the rule of evidence to the possible injury of the surety, by furnishing the *Voorhees* with *prima facie* evidence that only $2,000 was due from them at the date of the notes. 1 Story's Eq. Jur. secs. 327, 499, and note 3; *Hayes v. Ward*, 4 Johns. Ch. 134. As to the effect of the extension of time in discharging the surety, see *Bangs v. Strong*, 7 Hill, 252; *Appleton v. Parker*, 15 Gray, 173; *Bangs v. Mosher*, 23 Barb. 478; *Hart v. Hudson*, 6 Duer, 294–304; *Racine Co. Bank v. Lathrop*, 12 Wis. 478; 1 Parsons on B. & N. 512 and note, and 513; *Riley v. Gregg*, 16 Wis. 666; *Myers v. Wells*, 5 Hill, 463; *Fellows v. Prentiss*, 3 Denio, 512–517; *Dorlon v. Christie*, 39 Barb. 610; *Place v. McIlvain*, 1 Daly, 266, and 38 N. Y. 96; 1 Smith's L. C. 309; 2 Cases in Eq. (ed. of 1852), Pt.

2, 360 et seq., and 382; *Agand v. Ball*, N. Y. Court of Appeals, Albany Law Journal, vol. 1, p. 181.

COLE, J. We are unable to agree with the circuit court as to the effect of the evidence in this case. The court found, as facts established by the evidence, that the notes mentioned in the answer were accepted by the plaintiffs in payment and extinguishment of two thousand dollars of the indebtedness due from the defendants *Voorhees*, and that it was, when the notes were delivered, understood and intended that they should be a payment to that amount. Now it seems to us that the testimony is entirely insufficient to warrant any such conclusion. It must be remembered that in this state the doctrine is well settled, that the taking of a promissory note of the debtor, " either for a precedent liability, or a debt incurred at the time, is no payment unless expressly so agreed " by the parties. This has been expressly or impliedly held in the following cases : *Ford v. Mitchell*, 15 Wis. 304; *Eastman v. Porter*, 14 id. 39 ; *Webster v. Stadden*, id. 277; *Lindsey v. McClellan*, 18 Wis. 481; *Williams v. Starr*, 5 id. 534.

Now, what evidence is there in the case that there was any express agreement or understanding that the notes should be received and accepted in payment of the debt to the amount of $2,000 ? *J. M. Voorhees*, who signed the notes on behalf of the firm, utterly fails to swear that there was any such understanding or agreement; and, indeed, the general effect of his testimony is rather to disprove the presumption that they were to be received in payment and extinguishment of their indebtedness to the plaintiffs. It is not probable that he would have failed to swear to a matter so material to the defense, if any such agreement had actually been made. On the other hand, *C. N. Paine*, the person who transacted this business with

*J. M. Voorhees*, swears positively that "nothing was said about applying the notes in payment for the lumber." And from all the circumstances attending the giving these notes, as detailed by these two witnesses—and there is no other testimony bearing upon the question—we are fully satisfied that there was no agreement or understanding that these notes should operate as a payment of the debt. Of course, the burden of establishing this fact by sufficient evidence was upon the defendants. And they have really offered no satisfactory evidence in support of the defense set up in their answer. We cannot infer from the mere fact that the notes were executed and delivered, that the agreement was that they were to be received in payment. For if we were to make that presumption in this case, we should be compelled to infer such an agreement and understanding in every case where the debtor gives his note to the creditor for an existing indebtedness. But the rule in this state is otherwise, and that payment will not be implied from the mere fact that the debtor gave his note for the debt.

It then remains to determine whether there is any ground for saying that the defendant *Boyer* was released from his liability as surety upon the bond, by reason of the plaintiffs' having taken the notes in the manner they did. It is claimed that he is discharged, because, it is said, the plaintiffs, by accepting the notes, disabled themselves from bringing an action upon the bond until these notes matured. If this position were sound, that the plaintiffs, by merely taking the notes under the circumstances disclosed in the testimony, had precluded themselves from bringing an action upon the original obligation, there would certainly be great force in the objection. But we think no such consequences legitimately follow from that act. It is not claimed that there was any express agreement or understanding that they would not sue the bond before these notes matured. And if

the remedy upon the bond is suspended, it is because taking the notes under the circumstances had the legal effect to suspend it. A slight reference to the nature of the action, and the condition of the parties when the notes were taken, will show that the plaintiffs, by the act of receiving them, did not disable themselves from bringing an action upon the bond.

The bond and contract upon which the action is brought are both under seal. The contract was executed by and between the parties on the 4th of March, 1868, by which the plaintiffs agreed to stock a lumber yard at Minnesota Junction with a reasonable amount of lumber, lath, shingles, cedar posts, etc., not to exceed at any one time in amount five thousand dollars, which the defendants *J. M. & T. V. Voorhees* were to sell, receiving a certain amount as commissions for their services. The *Voorhees* were once in each week to render an account of sales made by them, and forward all moneys in their hands belonging to the plaintiffs, less their commissions. At the expiration of the agreement they were to turn over all the stock of lumber remaining unsold, and moneys then in their hands belonging to the plaintiffs. The agreement was to continue one year from date, with the privilege on the part of the plaintiffs to continue it two years thereafter, if they should deem it expedient to sell lumber at the Junction. The bond was executed at the same time by the *Voorhees* as principals, and the defendant *Boyer* as surety, in the penal sum of three thousand dollars, conditioned to be void if the *Voorhees* should in all things truly keep and perform the covenants and conditions mentioned in the agreement. In the fall of 1868, and about three weeks before the notes were given, *C. N. Paine* went to the junction and saw *J. M. Voorhees* about the amount then due for lumber received and sold. He wanted money, and *Voorhees* says that he told *Paine* at the time that the amount

of lumber received was about $2,700, only a part of which was sold; that they could only pay a small part; and that finally "we agreed to pay it in installments of five hundred dollars a month." The notes were subsequently sent to the *Voorhees* for execution, signed by them, and returned. *Paine* says that when he told *Voorhees* that he wanted some money, the latter said that he could not pay them, and wanted them to wait six months for amount due. "I said, no; that it was quite a time past due; we must have it. He asked if we could not raise it on their notes. I said I did not know. He said he would give their paper if we could. He said he could pay some of it soon—in three or six months. I said that it could not be raised, but perhaps on two or three months. The understanding was that he would give his paper one, two, three and four months. I said I would take paper and see what could be done with it. The notes were written out; after they were written out, I said I would not take them then; they were not signed. He asked why; said the bond was good. I said that before taking them I would consult attorney, and if we concluded to do so, would send notes to sign." There is really no great discrepancy between the statements made by *J. M. Voorhees* and those of *C. N. Paine* in regard to the facts attending the giving of the notes. *Voorhees* says that it was "*Paine's* proposition that we should give notes. We were hard pressed for money, and I said if he would give us time we could pay it. He wanted two notes, one for thirty days and one for sixty days. I told him I did not think we could pay so large an amount in so short a time. I told him I would execute four notes for $500 each, to be paid monthly. Signed notes pursuant to understanding. *I told him that he was secured; Boyer was perfectly good.*" It is proper to remark in this connection, that the notes were never negotiated, but were brought

into court by the plaintiffs on the trial and tendered for cancellation.

Now, the sole question is: What was the effect of this transaction? Did the taking of the notes, under the circumstances, of necessity supersede the bond and contract to the amount of $2,000, or suspend the remedy on these specialties, or were the notes simply collateral security to the original indebtedness, and made for the purpose of realizing money for the *Voorhees* for the time being? It will be seen that the amount for which the notes were given was due on the contract; and, by an admission made on the trial, more than that amount was due thereon. A breach of the bond had already occurred, since the *Voorhees* had not paid over according to the conditions of the contract. There was no understanding or agreement that the notes were to be received in payment of the debt due; and the testimony clearly repels the inference that a release of the surety was intended. Of course, "the rule is well settled, that when, by a valid and binding agreement between the creditor and principal, without the consent of the surety, time is given the debtor which ties up the hands of the creditor, though it be for only a single day, the surety is discharged. The creditor must be in such a situation that when the surety comes to be substituted in his place by paying the debt, he may have an immediate right of action against his principal." This is the language of the court in *Fox v. Parker*, 44 Barb. 542–544; and the doctrine is laid down in substantially the same words in many cases. There are certain securities which are said to imply an agreement for the suspension of the remedy on the original debt on account of which they are taken. Thus, if a note is given on a simple contract debt, during the currency of the security the original remedy is suspended. *Okie v. Spencer*, 2 Wharton, 253; *Price v. Price*, 16 M. &. W. 231; Chitty on Con-

tracts, 660; *Fellows v. Prentiss*, 3 Denio, 512. But it is said by a learned author that "the taking a bill or note from a party bound by a contract under seal, does not extinguish or suspend the remedy on the specialty, unless the bill or note is actually paid." Byles on Bills, *304. This is so held in cases at law. *Davey v. Prendergrass*, 5 B. & Al. 187 (7 Eng. C. L. 62). And the reason given for the rule is that general principle of the common law which requires that the obligation created by an instrument under seal shall only be discharged by force of one of equal validity. See also *Locke v. United States*, 3 Mason, 446; *Tate v. Wymond*, 7 Blackf. 240. The soundness of this reason has sometimes been questioned. *United States v. Howell et al.*, 4 Wash. C. C. 620. But in equity the rule is different. *Rees v. Berrington*, 2 Ves. Jr. 540. In this latter case, which is a leading case upon this subject, the question does not seem to have been considered whether, by the sole act of accepting a promissory note of the debtor for the amount due upon a sealed instrument, the remedy upon the specialty would by legal intendment be deemed suspended. Whether there was not some other consideration aside from the giving of the notes for the forbearance in that case, does not appear. The chancellor assumes that the "arrangement" by which further time of payment was given, was valid in equity, and that the creditor had suspended, by his act, the remedy upon the bond until the notes matured. The obligee, he says, has disabled himself from bringing suit upon the bond, if the surety should insist upon its being put in suit, and consequently cannot do that equity to the surety which the latter has a right to demand. In the case before us, it is not necessary to inquire whether the notes given for a part of the amount due upon the contract constituted a sufficient consideration for extending the time of payment, and suspending the right to enforce the contract by an action upon it. For we are satisfied that no such

extension was given. It is entirely clear to our minds that the plaintiffs might have brought their action at once upon the bond and contract, notwithstanding they had accepted these notes. And it is equally clear that the surety might at any moment have paid up the amount due on the contract. The taking of the notes, then, did not supersede the bond and contract, or suspend any remedy upon them. Any such presumption would be unwarranted, and in conflict with all the facts of the case. And as the rights of the parties in reference to the original contract were not changed by the notes, it follows that there is no ground for saying that they operated as a discharge of the surety.

The strongest case we have found in support of the view we have taken of the one at bar, is that of the *United States v. Hodge et al.*, 6 How. (U. S.) 279. That was an action brought against the defendants as sureties upon the bond given by the postmaster of the city of New Orleans for the faithful discharge of his duties as such postmaster. Having failed to perform these duties, an action was commenced on the bond against his sureties, alleging a large defalcation by the postmaster. In their defense, the defendants set up a mortgage which was executed by the postmaster the 15th of August, 1839, on property real and personal, to secure the payment to the post-office department of a sum not exceeding sixty-five thousand dollars, or such sum as might be found due on a settlement, from and after six months from the date of the mortgage. This instrument, which gave time for the payment of the indebtedness of the postmaster, was claimed to operate as a discharge of the sureties. In this case, of course, the mortgage was of equal dignity with the bond, and avoided the objection that an obligation under seal cannot be varied by anything of less solemnity. The court held that the right of action on the bond was not suspended for the time limited in the mortgage; that the principle was in

no respect different from that which arises on a promissory note or bill where collateral security is taken; that the remedy on the collateral instrument is wholly immaterial, unless it discharges or postpones that on the original obligation; and that, as there was no such condition in the mortgage, it consequently did not in any respect affect or suspend the remedy of the government on the bond. P. 283. This case is entirely decisive of the one before us. If what was done in that case by the principal debtor did not operate as a release of the sureties upon their obligation, there is no ground for saying that the defendant *Boyer* was released in the present case. No injury has been done to him. He was left free to act for the protection of his interests as though no notes were given. Either he or the other defendants could at any time have discharged the bond by paying the amount due on the contract. The case is analogous in principle to *Emes v. Widdowson*, 4 C. & P. 151 (19 Eng. C. L. 316); *Elwood v. Dufendorf*, 5 Barb. 398; *Morgan v. Martien*, 32 Mo. 438; *Weller v. Ransom*, 34 id. 362; *Rucker v. Robinson*, 38 id. 134; *McCune v. Belt*, id. 281; *Fox v. Parker*, *supra*. See also, *Wyke v. Rodgers*, 1 De G. MacN. & G. 408.

The other questions discussed upon the brief of the counsel for the defendant seem to us not to require any special notice. It is suggested that the exceptions are not sufficient to enable this court to review either the finding of facts or conclusions of law. Exceptions are taken specifically to the third, fourth, fifth, sixth, seventh and eighth findings of fact, and to all the conclusions of law. According to our view, all the conclusions of law are erroneous.

We think the judgment of the circuit court must be reversed, and the cause remanded with directions to enter judgment in favor of the plaintiffs for the sum admitted to be due on the contract.

*By the Court.*—So ordered.

A motion for a rehearing was denied at the June term, 1871, and the following opinion filed:

COLE, J.   On the motion for a re-hearing, it is insisted that the only legitimate inference to be drawn from the act of the plaintiffs in accepting the notes of the *Voorhees* is, that they thereby intended to, and in fact did agree to, suspend their remedy on the bond and contract during the currency of these notes.   But we think the evidence very clearly rebuts any such inference or presumption.   *J. M. Voorhees* says that when he and *C. N. Paine* were talking over the matter about giving these notes, and the time they were to run, he told *Paine* "that he was secured; that *Boyer* was perfectly good."   This shows that there was no intention of releasing the surety, and that the understanding between the parties at the time was that the remedy upon the bond and contract was not in any manner to be affected by accepting the notes.   The giving of the notes, then, was not to have the effect of discharging the surety, but his liability was to continue according to the undersatnding of the parties. So, in view of the evidence upon this point, we need not determine whether, ordinarily, an acceptance by the creditor, of the debtor's promissory note for the amount due upon a bond would amount, in law, to the giving of time on the specialty until the note is payable.

*By the Court.*—Motion for a rehearing denied.