KLAUBER and another vs. BIGGERSTAFF, Garnishee.

BANKS: CONTRACTS. *(1) "Currency" defined. (2, 3) Certificates of deposit, when negotiable.*

1. The word " currency," in a certificate of deposit, means *money*, including bank notes which, though not an absolute legal tender, are issued for circulation by authority of law, and are in actual and general circulation (at the *locus in quo*) at par with coin.

2. A certificate of deposit promising payment to order of a certain number of dollars "in currency" is negotiable. [*Ford v. Mitchell*, 15 Wis., 305; *Platt v. Bank*, 17 id., 223; and *Lindsey v. McClelland*, 18 id., 481, explained and criticised.]

3. Ch. 5, Laws of 1868, is also construed as declaring negotiable all notes or certificates of deposit payable in currency.

APPEAL from the Circuit Court for *Dane* County.

In an action against one Slater and one Ball, plaintiffs, on the 7th of December, 1878, garnished the State Bank of Madison, Wis., as being indebted to Slater or having in its possession personal property belonging to him. The garnishee denied that it was liable, unless it were by reason of having issued to Slater a certificate of deposit as follows: " $1000, Madison, Wis., Nov. 19, 1878. D. S. Slater, Esq., has deposited in the State Bank one thousand dollars, payable to himself in currency on the return of this certificate. [Signed by the cashier.]" It further answered that it was advised and believed that said instrument was a negotiable security; and that *Arthur Biggerstaff*, residing in Edina, Mo., claimed of said State Bank the indebtedness represented by such certificate of deposit; and it prayed that said *Biggerstaff* might be interpleaded in said action, and that the State Bank, on depositing with the clerk of the court the $1000 due on the certificate, might be discharged from liability either to plaintiff or to *Biggerstaff*. Accordingly, by order of the court, *Biggerstaff* was substituted for the State Bank as defendant; and he answered that he was the lawful owner and holder of said certificate of deposit; that on the 5th of December, 1878, he purchased and took an indorsement thereof from Slater, in good faith, for a valuable consideration, and before any dishonor thereof; that under the laws of Wisconsin it was negotiable, and neither it nor the money due thereon was subject to the garnishment proceedings; and that the words " in currency," used in said certificate, signified, and were used to signify, money.

On trial of the issue in garnishment, the circuit court found as facts, among other things, that the $1000 deposited by Slater in the State Bank was in currency; that Slater continued to own the certificate until December 21, 1878, when he sold and indorsed it to *Biggerstaff;* and that plaintiffs had recovered in the principal action against Slater and Ball. As matter of law, the court held that the certificate was not negotiable, and the fund was liable to garnishment. Judgment was accordingly rendered against the garnishee for the amount of the judgment in the principal action, and the costs of the garnishee proceedings (the aggregate of which was less than $1000); and the clerk was ordered therein to pay plaintiffs the amount out of the fund in his hands.

From this judgment the garnishee appealed.

*F. J. Lamb,* for the appellant, contended, among other things, that the statute passed after the former decisions of this court in regard to certificates of deposit payable in currency or current funds, viz., ch. 5 of 1868, was intended to declare instruments of this character negotiable, in accordance with the suggestion made to the legislature by this court in *Platt v. Sauk Co. Bank,* 17 Wis., 226. Certificates of deposit payable in money were already negotiable *(Lindsey v. McClelland,* 18 Wis., 484, and cases' there cited); and the change of the statute must have been made for the purpose here suggested, or it was wholly nugatory. A statute ought to be so construed that, if possible, no sentence, clause *or word* shall be superfluous, void or insignificant. *Harrington v. Smith,* 28 Wis., 67, and authorities there cited. In this connection counsel suggested that the word "money" is often used, and was probably used in the statute, as including bank notes current in ordinary payments, as cash. Burr. Law Dic. and App. Encyc., *sub verbo; Mann v. Mann,* 1 Johns. Ch., 231, 236–7. Counsel further stated that sec. 1, ch. 60, R. S. 1858 (sec. 1, ch. 44, R. S. 1849), was taken bodily from the R. S. of New York of 1829 (sec. 1, tit. 2, ch. 4, part 2–vol. 1, p. 768), and was identi-

cal with laws in force in New York in 1812 and 1821 (see brief of counsel in *Keith v. Jones*, 9 Johns., 120); and that, by decisions made in New York in the years last mentioned, it was held that promissory notes payable in "York state bills," or in "bank notes current in the city of New York," were negotiable. *Keith v. Jones, supra; Judah v. Harris*, 19 Johns., 144. See also *Pardee v. Fish*, 60 N. Y., 265; *Frank v. Wessels*, 64 id., 155; *Ehle v. Chittenango Bank*, 24 id., 548. These facts seem not to have been brought to the attention of this court at the time of its former decisions upon the negotiability of paper payable in currency.

For the respondents, there was a brief by *Gregory & Pinney*, and oral argument by *J. C. Gregory*. They argued, among other things, 1. That the rule, with few exceptions, has always been, that bills of exchange or certificates of deposit payable in "currency" or in "current funds" are not negotiable (Parsons on N. & B., 45–7; Edw. on Bills, 134–5); and that this court has so decided in three several cases. The ground of those decisions was, that such paper is not payable in money. *Ford v. Mitchell*, 15 Wis., 305 (1862); *Platt v. Sauk Co. Bank*, 17 id., 223 (1863); *Lindsey v. McClelland*, 18 id., 481 (1864). 2. That ch. 5, Laws of 1868, declares negotiable only such notes, etc., as are payable in money. Probably this amendatory act of 1868 was aimed at *O'Neill v. Bradford*, 1 Pin., 390, where it was held that a "certificate of deposit was neither a bill of exchange nor a promissory note, and was not negotiable." Counsel further contended that the word "as" in the phrase "any sum of money as therein mentioned," was entirely insignificant; that the bill as originally introduced read, "any sum of money in coin or currency as therein mentioned;" that it was amended by striking out the words "in coin or currency;" and that the failure to strike out the word "as" was a mere oversight.

RYAN, C. J. The controlling question in this case is, whether

the certificate of deposit stated in the proceedings is negotiable.

" A promissory note may be defined to be a written engagement by one person to pay another person therein named, absolutely and unconditionally, a certain sum of money at a time specified therein." Story on Prom. Notes, § 1. The ordinary form of a certificate of deposit of money falls precisely within the definition, and it seems strange that there ever was a doubt that it was in law a negotiable promissory note. *O'Neill v. Bradford*, 1 Pin., 390, and cases there cited. Such doubt, however, may now be considered at rest. *Kilgore v. Bulkley*, 14 Conn., 362; *Bank v. Merrill*, 2 Hill, 295; *Miller v. Austen*, 13 How., 218.

The learned counsel for the respondents concedes this; but he takes the position that the certificate of deposit in question is not a promissory note, because it is not payable in money. It is for so many dollars, payable in currency; and the learned counsel contends that the word *currency* does not express or imply money. It must be conceded that the cases in this court *(Ford v. Mitchell*, 15 Wis., 305; *Platt v. Bank*, 17 Wis., 223; and *Lindsey v. McClelland*, 18 Wis., 481), which he cites in support of his position, lend strong sanction to it.

These cases were decided, respectively, in 1862, 1863, and 1864, when the paper money, circulating in the state *de facto*, was of a very heterogeneous character. How much influence this fact had on those decisions, or on similar decisions elsewhere, it is impossible to say. It is, perhaps, not altogether an uncommon infirmity of judicial rules, that they are made in view of exceptional conditions of things presently existing. Passing evils or exigencies should have little weight in general rules of decision. Judicial rules ought properly to be based upon the general condition of society, and to be broad enough to meet occasional derangements incident to it.

In *Ford v. Mitchell* the certificate of deposit was payable in " currency," and protested for nonpayment. It had been

received by the plaintiff upon a sale made by him to the defendant. A majority of the court concurred in the judgment, on the ground that the plaintiff might recover for the original consideration. So Dixon, C. J., who delivered the principal opinion, holds. But his opinion also holds that the defendant was liable as a guarantor by force of his indorsement of paper not negotiable. Paine and Cole, JJ., decline to express any opinion on the latter point.

In *Platt v. Bank* the certificate of deposit was payable in "current funds." The chief justice delivered the opinion of the court, stating that such paper had been held not to be negotiable in *Ford v. Mitchell*, and that the cases were not distinguishable; adding that the rule is sustained by an almost unbroken current of authority. In this the learned chief justice was not, perhaps, quite as accurate as usual; and he was manifestly mistaken in his statement of *Ford v. Mitchell*. Though the decision appears to have been unanimous, it plainly proceeded somewhat upon a mistake.

In *Lindsey v. McClelland* the certificate of deposit was payable in "current funds," and was protested for nonpayment. The opinion of the court is delivered by Mr. Justice Cole, who not unnaturally falls again into the mistake that the court (in *Ford v. Mitchell*) had held that the words "payable in current funds" rendered the instrument not negotiable. *Platt v. Bank* is not cited. The opinion states that the certificate "is not payable in money, or what the court is bound to consider equivalent to money." The opinion then proceeds to show that if the certificate had been negotiable, it had been protested so as to hold the defendant as indorser; and further that it had not been received in payment, implying that the plaintiff might recover on the original consideration.

It is thus seen that *Platt v. Bank* is perhaps the only case in this court positively adjudging that an instrument payable in *current funds* is not negotiable, and that there is no case so holding of an instrument payable in *currency*. *Prima facie*

there might seem to be little difference in the two terms; but the opinion of the court in *Platt v. Bank* gives a construction to the term *current funds*, which the term *currency* could not properly bear. "It was suggested at the bar that the certificates might be deemed payable in the treasury notes of the United States, and therefore negotiable, since the law of congress declares such notes to be equivalent to gold and silver coin in payment and tender for debts. But the words 'current funds' cannot be so construed. They were undoubtedly intended to include all funds bankable in this state, and any such funds would answer the description and satisfy the contract. A tender in any of the notes of the banks of this state passing as currency would have discharged the obligation."

With such a construction of the term used, the instrument was not payable in money, and therefore not negotiable. So are nearly all of the authorities on paper positively payable in specific kinds of bank-notes, or in bank-notes generally, because not necessarily money.

The true and only test in this respect of the question whether an instrument be negotiable under the statute of Anne, is always whether it is payable in money.

Money is a generic and comprehensive term. It is not a synonym of coin. It includes coin, but is not confined to it. It includes whatever is lawfully and actually current in buying and selling, of the value and as the equivalent of coin. By universal consent, under the sanction of all courts everywhere, or almost everywhere, bank-notes lawfully issued, actually current at par in lieu of coin, are money. The common term, paper money, is in a legal sense quite as accurate as the term, coined money.

The question whether bank-notes are money or only *choses in action*, was directly involved in *Miller v. Race*, 1 Burr., 452.

"The whole fallacy of the argument," says Lord MANSFIELD, in delivering the unanimous opinion of the court,

" turns upon comparing bank-notes to what they do not resemble and what they ought not to be compared to, viz., to goods, or to securities, or documents for debts.

" Now they are not goods, not securities, nor documents for debts, nor are so esteemed; but are treated as *money*, as *cash*, in the ordinary course and transaction of business; by the general consent of mankind, which gives them the credit and *currency* of money to all intents and purposes. They are as much money as guineas themselves are, or any other *current* coin that is used in common payments as money or cash.

" They pass by a will which bequeaths all the testator's money or cash, and are never considered as securities for money, but as money itself. Upon Lord Ailesbury's will, £900 in bank-notes was considered as cash. On payment of them, whenever a receipt is required, the receipts are always given as for money, not as for securities or notes.

" So, on bankruptcies, they cannot be followed as identical and distinguishable from money, but are always considered as money or cash.

" It is a pity that reporters sometimes catch at quaint expressions that may happen to be dropped at the bar or bench, and mistake their meaning. It has been quaintly said '4that the reason why money cannot be followed is because it has no ear-mark;' but this is not true. The true reason is, upon account of the *currency* of it it cannot be recovered after it has passed in *currency*. So, in case of money stolen, the true owner cannot recover it after it has been paid away fairly and honestly upon a valuable and *bona fide* consideration; but before money has passed in *currency*, an action may be brought for the money itself. . . .

" Apply this to the case of a bank-note: an action may lie against the finder, it is true (and it is not at all denied), but not after it has been paid away in *currency*. And this point has been determined, even in the infancy of bank-notes; for 1 Salk., 126, M. 10, W. 3, at *nisi prius*, is in point. . . .

"Another case cited was a loose note in 1 Ld. Raym., 738, ruled by Ld. Ch. J. HOLT, at Guildhall, in 1698, which proves nothing for the defendant's side of the question; but it is exactly agreeable to what is laid down by my Ld. Ch. J. HOLT in the case I have just mentioned. The action did not lie against the assignee of the bank-bill, because he had it for a valuable consideration.

"In that case he had it from the person who found it; but the action did not lie against him, because he took it in the course of *currency*, and therefore it could not be followed in his hands. It never shall be followed into the hands of a person who, *bona fide*, took it in the course of *currency*, and in the way of his business. . . . . . .

"A bank-note is constantly and universally, both at home and abroad, treated as money — as cash; and paid and received as cash; and it is necessary for the purposes of commerce that their *currency* should be established and secured."

This case was approved or followed in *Clarke v. Shee*, Cowper, 197; *Lowndes v. Anderson*, 13 East, 130; *Solomons v. The Bank*, id., 135; *Wright v. Reed*, 3 D. & E., 554; *Camidge v. Allenby*, 6 B. & C., 373; *De la Chaumette v. The Bank*, 9 B. & C., 208; *Snow v. Peacock*, 3 Bing., 406; *Strange v. Wigney*, 6 Bing., 667, and other cases. And the opinion of Lord MANSFIELD goes far to make the word "currency" equivalent to the word "money."

It has also been very generally followed in this country. In *Bank of U. S. v. Bank of Georgia*, 10 Wheat., 333, Mr. Justice STORY, in delivering the opinion of the court, says: "Bank-notes constitute a part of the common *currency* of the country, and ordinarily pass as money. When they are received as payment, the receipt is always given for them as money. They are a good tender as money, unless specially objected to; and, as Lord MANSFIELD observed in *Miller v. Race*, 1 Burr. Rep., 457, they are not, like bills of exchange, considered as mere securities or documents for debts."

Here is a distinction, recognized in many of the cases, between currency which is money and currency which is legal tender. To be money, part of the circulating medium, it is not essential that currency should be legal tender against the wishes of the person to whom it is tendered. Even coined money is not, under all circumstances, legal tender. *Sears v. Dewing*, 14 Allen, 413; *Mather v. Kinike*, 51 Pa. St., 425.

But paper currency, bank-notes which are current *de jure et de facto*, are legal tender unless specially objected to at the time of tender, for the reason that they are money, though not absolutely legal tender. With some exceptions this doctrine is general in this country. *Thompson v. Riggs*, 5 Wall., 663; *Veazie Bank v. Fenno*, 8 Wall., 533; *Hepburn v. Griswold*, id., 603; *Legal Tender Cases*, 12 Wall., 457; *Young v. Adams*, 6 Mass., 182; *Snow v. Perry*, 9 Pick., 539; *Wood v. Bullens*, 6 Allen, 516; *Bush v. Baldrey*, 11 Allen, 367; *Moody v. Mahurin*, 4 N. H., 296; *Cummings v. Putnam*, 19 N. H., 569; *Brown v. Simons*, 44 N. H., 475; *Frothingham v. Morse*, 45 N. H., 545; *Keith v. Jones*, 9 Johns., 120; *Judah v. Harris*, 19 Johns., 144; *Leiber v. Goodrich*, 5 Cow., 186; *Pardee v. Fish*, 60 N. Y., 265; *Frank v. Wessels*, 64 N. Y., 155; *Mann v. Mann*, 1 Johns. Ch., 231; *Bayard v. Shunk*, 1 W. & S., 92; *Legal Tender Cases*, 52 Pa. St., 9; *Buchegger v. Shultz*, 13 Mich., 420; *Williams v. Rorer*, 7 Mo., 556; *Seawell v. Henry*, 6 Ala., 226; *Ball v. Stanley*, 5 Yerger, 199; *Cooley v. Weeks*, 10 Yerger, 141; *Noe v. Hodges*, 3 Humph., 162. Several of these cases will be found to hold that while gold and silver were at a high premium above paper, and not circulated as money, coin was not to be considered as currency but as a commodity; that the whole currency of the country then consisted of paper money, circulation at par being an essential quality of currency.

In fact almost all civilized countries, including this country, have a mixed circulation of coin and bank-notes. These con-

stitute the currency of the country — its money; and the general term, currency, includes both. Currency, therefore, means money — coined money and paper money equally. But it means money only; and the only practical distinction between paper money and coined money, as currency, is that coined money must generally be received, paper money may generally be specially refused, in payment of debt; but a payment in either is equally made in money — equally good. The confusion in the cases appears to have arisen for want of proper distinction between money which is current and money which is legal tender. The property of being legal tender is not necessarily inherent in money; it generally belongs no more to inferior coin than to paper money.

In the use of the term, currency does not necessarily include all bank-notes in actual circulation; for all bank-notes are not necessarily money. In this use of the term, currency includes only such bank-notes as are current *de jure et de facto* at the *locus in quo;* that is, bank-notes which are issued for circulation by authority of law, and are in actual and general circulation at par with coin, as a substitute for coin, interchangeable with coin; bank-notes which actually represent dollars and cents, and are paid and received for dollars and cents at their legal standard value. Whatever is at a discount — that is, whatever represents less than the standard value of coined dollars and cents at par — does not properly represent dollars and cents, and is not money; is not properly included in the word currency. In this sense, national bank-notes, which are not legal tender, are now as much currency as treasury notes, which are legal tender.

This construction of the term, currency, might, perhaps, properly be extended to the term, current funds. It must extend to the latter term whenever it is used in the legal sense of money. Bankers and money-dealers cannot, by choice or use of terms, give the character and attributes of money to anything not money — to anything of less value than money.

The legislature has doubtless power to make negotiable paper other than for the payment of money (*Price v. Ins. Co.*, 43 Wis., 267); but where a statute is plainly intended to apply to money, every term used to indicate money, not commodities, must be held to signify money in the sense in which that term is here used.

The certificate of deposit in this case calls for so many dollars; that is to say, for so much money. It makes them payable in currency, which also means money. It could be paid only in money. It was, therefore, clearly negotiable under the statute of Anne. Whether the holder could claim its payment in legal tender is a different question, not in this case, and not passed upon.

So far, the question has been considered under the law as it stood when *Ford v. Mitchell, Platt v. Bank* and *Lindsey v. McClelland* were decided; and, in upholding the negotiable quality of the certificate of deposit in this case, it has not been found necessary expressly to overrule any of those cases; hardly any of the language used in the opinions given upon them. But, before the certificate of deposit here was made, chapter 5 of 1868 had amended the statute governing such paper. The amendment makes the section embrace certificates of deposit, which was quite unnecessary, because this court had held four years before that such an instrument payable in money is negotiable. *Lindsey v. McClelland, supra.* The effective part of the amendment was the insertion of the word *as* between the words *any sum of money*, and the words *therein mentioned*, so as to make the section declaring instruments negotiable to read, "whereby he shall promise to pay to any person or order, or unto the bearer, any sum of money, as therein mentioned," instead of "any sum of money therein mentioned," etc. The littleness of the word introduced by the amendment was learnedly scoffed at by counsel, forgetting that little words as often control meaning as big ones — perhaps oftener; and that the rule of construction, to give effect,

if possible, to every word in a statute, applies *a fortiori* to a word introduced by amendment. As the words *therein mentioned* stood in the original section, they merely applied to the sum of money itself. As controlled by the word introduced by the amendment, they mean the sum of money *as it is therein mentioned*. That cannot mean the terms or conditions of payment, as both the original and the amended section declare that the money shall be due and payable as therein expressed, and the words *as therein mentioned*, in the amended section, appear susceptible of no construction except the kind of money therein mentioned.

The learned counsel for the respondent was at the pains of showing that the amended section, as introduced in the legislature, read any sum of money, *in coin or currency*, as therein mentioned; and that the words, in coin or currency, were stricken out before the passage of the section. And he argued with great force that the legislature had refused to make negotiable paper payable in currency. But the argument would apply as well to coin. It is impossible now to say why the words were stricken out. It may have been because they were considered unnecessary, as this court considers them, to the purpose of the section. It may have been, as was suggested from the bench during the argument, because the legislature feared that the words might restrict the negotiability of instruments to such as should be expressly payable either in coin or in currency. Certainly the meaning of the section is broader without the words than it would have been with them. As it is, it extends negotiability to all instruments payable in money, without reference to the kind of money, unless the kind be mentioned in the instrument itself. In *Platt v. Bank*, Judge Dixon had said: " If the legislature deem it expedient to declare such instruments negotiable, they have the undoubted power to do so." Perhaps the amendment was in answer to that suggestion, and was intended to overrule *Ford v. Mitchell*, *Platt v. Bank* and *Lindsey v. McClelland*. It was certainly

intended to change the statute, and perhaps did change it as now indicated.

The amendment has no further effect on this decision than to relieve the court of the responsibility, and lay it on the legislature; for the amended section in effect declares the law to be what this court declares it was without the amendment.

The negotiability of certificates of deposit is of vast importance in commerce. Their want of negotiability upon slight grounds would go largely to prevent their usefulness in the course of business; and this court considers it far wiser to hold them payable in money, when the terms used will admit of that construction, than to hold them not to be negotiable on the ground of the particular terms used.

*By the Court.* — The judgment is reversed, and the cause remanded to the court below with directions to render judgment for the garnishee, the appellant here.