## ALLAN vs. ELDRED.

*September 1 — September 21, 1880.*

BILLS AND NOTES.    *What acts of payee named in a draft make the paper his own.*

1. Unreasonable delay of the payee of a draft to present it to the drawee, or to notify the drawer of its non-acceptance or non-payment, or to return it to the drawer as refused by the payee, makes the paper the payee's own, and discharges the drawer.

2. E., being indebted to A., proposed to give him an order on X., and A. refused to receive it, giving no reason except that he wanted the money. E. then promised to send A. a sixty-day draft, which A. understood was to be on a bank. Six weeks thereafter A. wrote to E. asking the latter to send him a sixty-day draft for the amount due, and E. sent him a sixty-day draft on X. Without presenting this draft to X., returning it to E., or making any objection to it, A. kept it about a year, and then offered to return it, but E. refused to receive it. It does not appear that X. was unable to pay the draft at any time, or that E. suffered any loss by the delay in presenting or returning it. *Held*, that these facts are not sufficient in law to relieve A. from the operation of the rule above stated, in the absence of any finding by the jury that E. acted in bad faith in sending the draft to A. under the circumstances.

APPEAL from the Circuit Court for *Oconto* County.

Action for a balance alleged to be due on plaintiff's account against defendant for services. Defendant claimed to have paid such balance by draft sent to the plaintiff more than a year before the action was brought. The case is more fully stated in the opinion. The defendant appealed from a judgment in favor of the plaintiff.

*H. H. Woodmansee*, for the appellant:

The plaintiff, having received the draft and retained it for more than a year after it became due, without objection, must be treated as the legal holder thereof. 1 Wait's L. & P., 384. As such he was bound to use diligence to secure its payment, and in case of its dishonor to notify the drawer. *Walsh v. Dart*, 23 Wis., 334; *Dolph v. Rice*, 18 id., 397; *Cork v. Bacon*,

Allan vs. Eldred.

45 id., 192. By reason of his *laches* in this respect the draft became an absolute payment of the debt. *Mehlberg v. Tisher*, 24 Wis., 607, and cases there cited.

*W. H. Webster*, for the respondent:

After being distinctly notified by the plaintiff that he would not receive a draft on Leigh in payment of the debt, the defendant had no right to send such a draft and expect it to be treated as commercial paper. Plaintiff might properly either retain or destroy a draft so sent. *Jeune v. Ward*, 1 B. & Ald., 653. Nor has defendant shown any loss by reason of plaintiff's retention of the draft. The rule is, that unreasonable retention of a draft will only operate as payment if loss be occasioned thereby. *Jones v. Heiliger*, 36 Wis., 149; *Townsends v. Bank of Racine*, 7 Wis., 185; 3 Wils., 553; 2 Dall., 100; 13 S. & R., 318; *Kephart v. Butcher*, 17 Iowa, 240; *Clark v. Young*, 1 Cranch, 181; *Ward v. Evans*, 2 Ld. Raym., 928; *Chamberlyn v. Delarive*, 2 Wils., 353; *Cumber v. Wave*, 1 Smith's L. C., 388 and note; 2 Am. L. C., 184, 185; *State v. Rosborough*, 2 Rich. (Law), 241; *Snyder v. Findley*, Coxe (N. J.), 78; *Smith v. Wilson*, Andrews, 187, 228; *Wright v. Crockery Ware Co.*, 1 N. H., 282; *Gallagher v. Roberts*, 2 Wash. C. C., 191; *Hamilton v. Cunningham*, 2 Brock., 350; *Middlesex v. Thomas*, 20 N. J. Eq., 39.

ORTON, J. The main facts of this case must be stated to make the instruction of the court to the jury, which is claimed to be erroneous, intelligible. The amount of the indebtedness of the defendant to the plaintiff had been agreed upon, and the defendant demanded payment in money. The defendant proposed to give the plaintiff an order on one John Leigh, and the plaintiff refused to receive it, but gave no reason for such refusal, except that he wanted the money. The defendant then promised to send to the plaintiff a sixty-day draft, which the plaintiff understood was to be on a Milwaukee bank. About six weeks thereafter the plaintiff wrote to the defendant

Allan vs. Eldred.

the following letter: "MILWAUKEE, August 14, 1877. A. ELDRED, Esq.— *Dear Sir:* Would you be good enough to send me a sixty-day draft for the amount due me on your books, and greatly oblige, Yours truly, HAMILTON ALLAN, M. D." In a very few days thereafter the plaintiff received from the defendant, by letter, the following draft: "OCONTO, August 17, 1877. Sixty days after date pay to the order of Dr. Hamilton Allan $65.50, value received, and charge the same to the account of . . . ANSON ELDRED. . . $65.50. *To John Leigh, Esq., Stiles, Wis.*" This draft was kept by the plaintiff for about one year, and in the meantime was neither presented to Leigh nor returned to the defendant, nor was any objection made thereto, and nothing passed between the parties on the subject; and then the plaintiff offered to return the draft to the defendant, and the defendant refused to receive it, claiming that it was taken by the plaintiff in payment of said indebtedness. It does not appear that the defendant has suffered any loss by this delay in presenting or returning the draft, or that Leigh was unable to pay it at any time. The following instruction was given to the jury, and excepted to by the defendant's counsel, and unquestionably induced the verdict for the plaintiff: "If, from the evidence, you believe that at the time of the settlement between the plaintiff and defendant of the amount of the plaintiff's claim, the matter of the draft by the defendant on John Leigh was talked over between the parties, and that the plaintiff distinctly notified the defendant that he would not accept such a draft, then the defendant had no right to send it to the plaintiff; and if he did send it, after having received such notice, the return of the draft to the defendant before suit brought was sufficient, and the plaintiff is entitled to your verdict for $65.50."

The authorities cited by the learned counsel of the respondent are applicable to a case where the drawee was or became insolvent and unable to pay, or refused to accept or pay the draft or check on presentation, and where in such case, by de-

laying notice of such non-acceptance or non-payment, or to return it to the drawer, no loss was occasioned. In such a case such delay or laches would not make the draft or check the property of the payee in payment of the precedent debt. Such was the case of *Jones v. Heiliger*, 36 Wis., 149, and the other cases cited on the question. But these authorities are inapplicable to this case, where the drawee must be presumed to have been able to meet the draft if it had been presented to him, and it was never presented, or returned to the drawer, or any notice given to the drawer of its non-acceptance or non-payment. This case, as presented to the jury by the above instruction, and as it appears here upon the exceptions, does not rest upon any such question as the solvency or insolvency of the drawee, or whether any loss was occasioned by the delay in presenting or returning the draft.

The real questions are, whether the refusal of the plaintiff to take a draft on Leigh in the first place and long beforehand, excused him from objecting to the acceptance of, or from presenting or returning, such a draft so sent to him in answer to such a general letter, for a year after receiving it; or, in other words, whether such *mere refusal six weeks before* to accept the proposition of the defendant to give him a draft on Leigh, which he afterwards so receives and retains, makes this case an exception to the general and elementary rule applicable to this class of commercial paper, viz., that an unreasonable delay of the payee to present the draft to the drawee, or to notify the drawer of the non-acceptance or non-payment, or to return the draft to the drawer as not accepted by him, makes the paper his own and discharges the drawer. Story's Bills of Exch., §§ 108, 109. The only difference between this case and *Mehlberg v. Tisher*, 24 Wis., 607, is this refusal beforehand to accept such a draft as was afterwards so received; and the opinion in that case not only states the above rule, but applies it to facts substantially the same as in this case, with this difference only. The language of the opinion is: "The taking

of a bill of exchange, on a previous indebtedness of the drawer to the payee, is *prima facie* payment of the debt.    It is absolute payment if the payee or holder, through his own negligence, fails to take proper steps to obtain payment of the bill, or, if not paid, to charge the drawer with liability upon it; as if the payee or holder fails to present it within the proper time, or, presenting it, fails to give proper notice of its non-acceptance or non-payment, in cases where such notice is required."    The same rule is recognized in *Webster et al. v. Stadden*, 14 Wis., 277; *Ford v. Mitchell*, 15 Wis., 304; *Lindsey v. McClelland*, 18 Wis., 481.    This mere fact will not make the case an *exception* to this rule.    If this rule prevails at all in the case, it must have full force and effect and govern it.    This fact, if it have any bearing whatever, must raise the question whether the plaintiff ever actually accepted the draft, and must prevail to the extent of rendering the subsequent receipt by the plaintiff of this draft on Leigh by mail from the defendant, and his retention of it without objection and without presentation for a year, no acceptance of it in any legal sense or for any purpose.    If the plaintiff *accepted* the draft, then the case falls within the above rule and is governed by the above decision, and the judgment must be reversed, so that the case depends upon this one question of *acceptance*.    By the authority of *Phœnix Ins. Co. v. Sholes et al.*, 20 Wis., 35, the receipt and retention of the draft so long in silence and without objection implies its acceptance. To give this one fact of the plaintiff's previous refusal to accept such a draft the legal effect of taking the case out of this rule, and rendering the above decision inapplicable, it must conclusively imply that, because the plaintiff had once and long before refused to accept such a draft, he could not or would not afterwards do so under any circumstances.    It must conclusively imply, also, that the defendant could not and did not send the draft in good faith or with honest intentions, and that his second proposition to the plaintiff to accept such a

draft must have been not only insincere and in bad faith, but an indignity and disrespect which justified the plaintiff in treating it with contemptuous silence, and throwing it aside as a mere nullity, and in utterly disregarding it.

It would require strong evidence that so sending the draft was a mere *sham*, and would justify the plaintiff in treating it as such, and take this bill of exchange, so received, out of the rule governing the receipt and retention of any bill of exchange, and which imposes upon the payee the ordinary duties of presentment and notice of dishonor; and we cannot think that the mere fact that the plaintiff had once, and long before, refused to accept such a draft, constitutes such evidence. His refusal at one time would be no binding contract or continuing assurance that he would not at a future time receive it. He could reconsider such refusal, and afterwards accept it if he saw fit to do so; and there is nothing in the case which rebuts the implication and presumption arising from his having received it without objection and having retained it in silence, that he had accepted it. To sustain this judgment, and sanction the above instruction to the jury as a conclusion of law from this mere fact, we should be compelled to hold that this fact alone sufficiently rebutted such a presumption. It is a question of fact, rather than of law, whether the defendant acted in bad faith in sending the draft to the plaintiff under the circumstances; and if it had been found that he did, then it might be a question of law whether the plaintiff, in such case, was justified in treating the draft as a nullity and in disregarding it. But this fact of bad faith has not been found, but the learned circuit judge has assumed by this instruction that the fact of the plaintiff having once, and long before, refused to accept such a draft, is conclusive evidence of it. In either view the instruction was clearly erroneous.

*By the Court.* — The judgment of the circuit court is reversed, with costs, and the cause is remanded for a new trial.